STATE OF NORTH CAROLINA v. MOHAMMED JOMAL THOMPSON

No. 9215SC521

(Filed 18 May 1993)

1. **Evidence and Witnesses § 437 (NCI4th)— in-court identification of defendant—no improper photographic identification— no taint from newspaper photograph**

   A robbery victim's pretrial photographic identification of defendant was not impermissibly suggestive because of the victim's out-of-court exposure to a newspaper article and photograph of defendant, and the trial court did not err in denying defendant's motion to suppress the photographic and in-court identifications, where the evidence tended to establish that all of the photographs shown to the witness in the photographic lineup were in color and all were pictures of black males with similar pigment, age, and physical stature; each male had a similar style of hair and a mustache; the pictures were all stapled together, no names were written on them, and no suggestions were made to the victim as to which photograph to choose; and although the victim had seen defendant's photograph in the newspaper prior to the photographic lineup, she testified on voir dire that her iden-

tification of the photograph was not based on having seen the newspaper picture of defendant. Furthermore, the victim's positive unequivocal identification of defendant as the perpetrator of the crime less than one year after the robbery alleviated any question as to the reliability of the in-court identification as being tainted by the pretrial identification procedures.

**Am Jur 2d, Evidence §§ 371-373.**

**Admissibility of evidence of photographic identification as affected by allegedly suggestive identification procedures. 39 ALR3d 1000.**

2. **Evidence and Witnesses § 2750.1 (NCI4th) — probation officer called to give identification testimony — defendant's opening of door to other testimony**

By eliciting testimony that a probation officer's relationship with defendant was a "professional" one, the defense opened the door to questions about the nature of such relationship, even though defendant initially called the probation officer only to verify information about defendant's height, weight, and physical appearance at the time of the crime.

**Am Jur 2d, Evidence §§ 336 et seq.**

3. **Robbery § 4.3 (NCI3d) — armed robbery — sufficiency of evidence**

Evidence was sufficient to permit a reasonable inference of defendant's guilt of armed robbery and to take the case to the jury, even though the only eyewitness gave prior inconsistent descriptions of defendant, where the witness positively identified defendant as the man who robbed her with a shotgun both at trial and at the lineup, and all the other elements of armed robbery were supported by ample uncontroverted evidence.

**Am Jur 2d, Robbery § 64.**

4. **Criminal Law § 425 (NCI4th) — defendant's failure to produce rebuttal or alibi evidence — no impermissible comment on failure to take stand**

There was no merit to defendant's contention that the trial court erred in failing to sustain defendant's objection to the prosecutor's comments about defendant's failure to testify, since the prosecutor spoke about defendant's failure to offer

STATE v. THOMPSON

[110 N.C. App. 217 (1993)]

rebuttal or alibi evidence, which he was permitted to do, but never impermissibly attacked defendant's failure to take the stand.

**Am Jur 2d, Trial §§ 245-249.**

5. **Evidence and Witnesses § 2407 (NCI4th) — fingerprints not used to link defendant to crime — denial of request for expert proper**

There was no merit to defendant's contention that the trial court should have granted his post-trial motion for a fingerprint expert, since the fingerprints at the crime scene were not used by the prosecution to link defendant to the crime.

**Am Jur 2d, Witnesses § 3.**

**Right of indigent defendant in state criminal case to assistance of fingerprint expert. 72 ALR4th 874.**

Appeal by defendant from judgment entered 8 January 1992 in Alamance County Superior Court by Judge Henry V. Barnette, Jr. Heard in the Court of Appeals 27 April 1993.

On 10 December 1990, defendant Mohammed Jomal Thompson was indicted by the Alamance County Grand Jury for the offense of robbery with a dangerous weapon. The State's evidence at trial tended to establish the following:

On 11 April 1990, at approximately 10:30 p.m., a black male entered Ken's Quickie Mart in Graham, North Carolina. The clerk, Frankie Wilson Bowlin, testified that the man carried a silver pistol and told her to "put it in a bag." As she turned to the register, a second black male entered the store and came towards her with a sawed-off shotgun. She handed the first man a bag with the money in it. The second man, while holding the shotgun in her face, repeatedly ordered Ms. Bowlin to open the safe. The store was well lit and Ms. Bowlin was able to observe the second man's face for approximately three minutes as he held the gun on her. The suspects then ran out the door, and Ms. Bowlin observed them walking across the parking lot.

Ms. Bowlin waited until the suspects were gone and then called the police. When the police arrived, Ms. Bowlin was in a highly emotional state. At that time, she gave the following description of suspect number two: Suspect number two was armed with a

**STATE v. THOMPSON**

[110 N.C. App. 217 (1993)]

shotgun. He was a black male, in his early twenties, approximately six feet tall, medium build, weighing 190 to 200 pounds, with a medium complexion. He wore black pants, a black jacket and a light brown hat with a narrow brim and a light colored band around it. The shotgun was a full length single barrel with a dark brown stock.

Sometime after the robbery, Ms. Bowlin gave a second description to Officer Chester of the Graham Police Department. According to Officer Chester, Ms. Bowlin described suspect number two as follows: Suspect number two is a black male, five feet six inches tall, medium build, 25 to 30 years of age, weighing 190 to 200 pounds, with a medium complexion.

On 5 May 1990, Ms. Bowlin saw a picture of a black male in the newspaper. The caption read, "Durham Teenager Charged in Murder of Roxboro Clerk," and the male pictured was the defendant. Ms. Bowlin called Detective Madden and told him the article had a picture of the man that robbed her. She carried the newspaper article to the police station, initialled it, dated it, and circled defendant's photograph in the article. According to Detective Madden, when Ms. Bowlin brought the article to him, she stated that the photo looked like one of the men who robbed her.

On 14 May 1990, Detective Madden brought a photo lineup for Ms. Bowlin to view at her workplace. Detective Madden told her to take her time, and if she saw anyone involved in the robbery, to point him out. Ms. Bowlin pointed to picture number three and said, "This is the man that had the shotgun." The man pictured in photo number three was the defendant.

Ms. Bowlin testified on voir dire that the identification of the photo in the lineup was not based on having seen the newspaper picture of the defendant. During the same hearing, Ms. Bowlin also made an in-court identification of the defendant as the man who was holding the shotgun on her on the night of 11 April 1990. Her recollection of the description she gave to Sergeant Norwood on the night of the robbery was that defendant was probably 5 feet 9 inches to about 6 feet, weighing approximately 165 pounds.

On voir dire, defendant testified that in April 1990 his height was 5 feet 5 inches, he weighed 130 to 140 pounds, and he was 17 years of age.

STATE v. THOMPSON

[110 N.C. App. 217 (1993)]

At trial, Ms. Bowlin testified to the following concerning the man holding the shotgun: He had nothing on his face; he had on a short brimmed tweed hat with a beige band around it; he was wearing a black jacket and black pants; his height was five feet six or seven; he weighed between 150 and 160 pounds; and he was in his late twenties. Ms. Bowlin testified first, without objection, that she recognized the second man in the courtroom and pointed out the defendant. When asked whether she was positive that defendant was the second man, she said, "I'm positive, I'll never forget that face as long as I live." She testified again, over defendant's objection, that there was "no doubt in her mind as to who[m] the second defendant was with the sawed-off shotgun." At trial, Ms. Bowlin also testified that her identification of the defendant was not related in any way to the photo identification, and that the photo identification did not influence her trial testimony. She stated that her identification of the defendant was based on what she saw in court and what she saw on the night of 11 April 1990.

At trial, defendant's probation officer, Beverly Stuart, testified that in April 1990, the defendant was approximately 17 years of age, his height was approximately 5 feet 3 inches and he weighed 140 to 150 pounds. On cross-examination, over defendant's objection, the State was permitted to question the probation officer about the nature of defendant's probation and about the history of their meetings while under her probationary supervision.

Defendant moved to dismiss at the close of the State's evidence and at the close of all the evidence. Both motions were denied. Upon a jury verdict of guilty to robbery with a dangerous weapon, the defendant moved for appropriate relief and also made a post trial motion for a fingerprint expert. Both of these motions were also denied. Defendant was sentenced to forty years imprisonment. Defendant appeals his conviction.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Kathryn Jones Cooper, for the State.*

*Craig T. Thompson for defendant-appellant.*

WELLS, Judge.

Defendant presents six assignments of error for our review. By his first assignment of error, defendant argues that the trial court erred in denying defendant's motion regarding his presence

in the court. Defendant, however, makes no argument and cites no authority in support of his contention. N.C. Gen. Stat. § 1A-1, Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure requires that appellant's arguments "contain citations of authority upon which the appellant relies." *See Byrne v. Bordeaux*, 85 N.C. App. 262, 354 S.E.2d 277 (1987). Because defendant has failed to cite any authority in support of his argument, this assignment of error is deemed abandoned. *Id.*

[1] By his second assignment of error, defendant argues that the trial court erred in denying his motion to suppress the photographic identification and the in-court identification because the identifications were made under circumstances that were unduly suggestive, were speculative, and were likely to result in misidentification. Specifically, defendant contends that the eyewitness identification was irreparably tainted by the out-of-court exposure to the newspaper article and photograph. We disagree.

Our courts have consistently held that pre-trial identification procedures which are so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification violate a defendant's right to due process and evidence thereof must be suppressed at trial. *State v. Powell*, 321 N.C. 364, 364 S.E.2d 332, *cert. denied*, 488 U.S. 830, 109 S.Ct. 83, 102 L.Ed.2d 60 (1988). The North Carolina Supreme Court in *State v. Powell*, set forth a two-step process in evaluating identification procedures for due process violations. The first inquiry, when a motion to suppress is made, is whether an impermissibly suggestive procedure was used in obtaining the identification evidence. If the answer is no, the court need not look further. If the answer is yes, the court must then determine whether the suggestive procedure gives rise to a substantial likelihood of misidentification. *Id.*

We note, initially, that the trial court made no findings of fact or conclusions of law as to these issues. Upon review of the entire record, we find that the identification procedures were not impermissibly suggestive. The State's evidence at trial tended to establish that all of the photographs shown to Ms. Bowlin in the photo lineup were in color and all were pictures of black males with similar pigment, age, and physical stature. Each male pictured had a similar style of hair and a mustache. The pictures were all stapled together, no names were written on the photos, and no suggestions were made to Ms. Bowlin as to which photograph

STATE v. THOMPSON

[110 N.C. App. 217 (1993)]

to choose. Although Ms. Bowlin had seen the defendant's photograph in the newspaper prior to the photo lineup, she testified on voir dire that her identification of the photograph in the lineup was not based on having seen the newspaper picture of the defendant. From the totality of the circumstances, we find no inference or interpretation of the facts which would lead us to conclude that the pretrial identification procedure was impermissible. Having concluded that the pretrial photo lineup used in obtaining Ms. Bowlin's out-of-court identification was not impermissibly suggestive, we need not consider whether the procedure gave rise to a substantial likelihood of misidentification. Because the procedure used was permissible, the trial court did not err in denying defendant's motions to suppress the out-of-court identification and the in-court identification of defendant. *State v. Billings*, 104 N.C. App. 362, 409 S.E.2d 707 (1991), *motion to dismiss allowed*, 332 N.C. 347, 421 S.E.2d 155 (1992). Furthermore, Ms. Bowlin's positive unequivocal identification of the defendant as the perpetrator of the crime less than one year after the robbery alleviates any question as to the reliability of the in-court identification as being tainted by pretrial identification procedures. This assignment of error is overruled.

[2] By his third assignment of error, defendant challenges the trial court's failure to sustain defendant's objection to the cross-examination testimony of defendant's probation officer. Defendant argues that the probation officer was called by the defendant to testify about the physical appearance, height and weight of the defendant as he appeared in April of 1990. This direct testimony did not involve defendant's probationary status or prior conduct in association with his probation. The prosecutor, however, was permitted to elicit testimony regarding defendant's prior conviction, the length of time defendant had been on probation, the frequency of defendant's visits, whether defendant missed regularly scheduled meetings, and whether his probation had been modified. Defendant argues that where the probation officer only testified she knew defendant in a "professional capacity," this was not tantamount to stating she knew the defendant as his probation officer, and questions involving defendant's probationary status were therefore improper. We find this to be a difference without a distinction.

The general rule is if a witness' direct testimony raises specific issues, it "opens the door" to cross-examination on those subjects. *State v. Burgin*, 313 N.C. 404, 329 S.E.2d 653 (1985). By eliciting

testimony that the probation officer's relationship with defendant was a "professional" one, the defense opened the door to questions about the nature of such relationship. Defendant could have chosen another witness to verify defendant's height, weight, and physical appearance at the time of the crime. Having chosen the probation officer as the verifying witness, however, the defendant may not now complain that allowing the cross-examination was erroneous. This assignment of error is overruled.

[3] Defendant next assigns error to the trial court's denial of defendant's motions to dismiss made at the close of the State's evidence and at the close of all the evidence. Defendant asserts that there was no corroborating evidence to the prosecution witness' eyewitness identification. We disagree.

A court shall submit a case to the jury where there is substantial evidence of each essential element of the crime charged and that the defendant is the perpetrator of the crime. *State v. Roseman*, 279 N.C. 573, 184 S.E.2d 289 (1971). There is "substantial evidence" if there is more than a "scintilla of evidence," considering the evidence in the light most favorable to the State, giving the State every reasonable intendment and every reasonable inference to be drawn therefrom. *State v. Powell*, 299 N.C. 95, 261 S.E.2d 114 (1980). Generally, contradiction, discrepancies, or inconsistencies are properly resolved by a jury, and do not warrant dismissal. *Id.* *See also State v. Thomas*, 296 N.C. 236, 250 S.E.2d 204 (1978).

Here, the prosecution's eyewitness gave differing descriptions of the defendant prior to trial. These prior inconsistent statements affect the weight the jury would afford her testimony, not the admissibility of such testimony. *State v. Bridges*, 266 N.C. 354, 146 S.E.2d 107 (1966). *See also State v. Silhan*, 302 N.C. 223, 275 S.E.2d 450 (1981). Defendant argues that Ms. Bowlin's identification testimony was inherently unreliable, and, without corroborating evidence, the State did not meet its burden of producing substantial evidence that defendant was the perpetrator of the crime.

In reviewing a motion to dismiss, the test is whether a reasonable inference of the defendant's guilt of the crime charged may be drawn from the evidence. *Powell*, 299 N.C. 95, 261 S.E.2d 114 (1980). Although Ms. Bowlin gave prior inconsistent descriptions of the defendant, she positively identified the defendant as the man who robbed her with a shotgun both at trial and at the photo lineup. Further, all the other elements of armed robbery

were supported by ample uncontroverted evidence. We find this evidence was sufficient to permit a reasonable inference of defendant's guilt and to take the case to the jury. We find the trial court did not err in denying defendant's motions to dismiss.

[4] Defendant next assigns error to the trial court's failure to sustain defendant's objection to the prosecutor's comments about defendant's failure to testify. Defendant argues that the comments in the prosecutor's closing argument were in clear violation of N.C. Gen. Stat. § 8-54, which our Supreme Court has interpreted to deny counsel leave to comment on the failure of a person charged with a crime to testify on his own behalf. *State v. McLamb*, 235 N.C. 251, 69 S.E.2d 537 (1952).

In its closing argument, the prosecution commented on defendant's failure to produce any alibi witnesses, but never directly commented on defendant's failure to take the stand. "Did you hear a single person come in here with an alibi defense as to where he was? Now, sure, I don't know where I was April 11th 1990, and I'm sure you don't either. But he should have." Defendant argues that these statements, and others to the same effect, amount to an impermissible attack on defendant's failure to take the stand. We disagree.

While it is true that the prosecution may not comment on defendant's failure to take the stand, "the defendant's failure to produce exculpatory evidence or to contradict evidence presented by the State may properly be brought to the jury's attention by the State in its closing argument." *State v. Jordan*, 305 N.C. 274, 287 S.E.2d 827 (1982). The prosecution's statements were directed at defendant's failure to produce rebuttal or alibi evidence, not at his failure to testify on his own behalf. We find no error.

[5] Finally, defendant argues that the trial court should have granted his post-trial motion for a fingerprint expert. Defendant maintains that he should have been allowed an expert witness to examine the fingerprints found at the scene because the fingerprints may have exculpated him.

The fingerprints, however, were not used by the prosecution to link the defendant to the crime and therefore could not be the basis of prejudicial error. The prosecution's case revolved around an eyewitness identification of the defendant as the perpetrator of the crime. During its case in chief, the State called Detective

Madden, who merely testified that the fingerprints taken from the crime scene were unidentifiable and inadmissible as evidence against the defendant. Since the State did not use the smudged prints as evidence of defendant's guilt, we find defendant's contention to be feckless.

For the reasons cited above, we find that the defendant received a fair trial free from prejudicial error.

No error.

Judges GREENE and WYNN concur.