STATE OF NORTH CAROLINA v. RUFUS GENE BANKS, JR.

No. COA96-646

(Filed 18 March 1997)

1. **Evidence and Witnesses § 1426 (NCI4th)— destruction of rape kit—not due process violation**

    A rape defendant's due process rights were not violated by the police department's destruction of a rape kit where the exculpatory value of DNA testing of seminal material in the kit was highly speculative; there was no reason to conclude that the police believed the rape kit had any exculpatory value at the time of the destruction; and the evidence supported the trial judge's finding that the rape kit was accidentally destroyed. N.C.G.S. § 15-11.1(a); U.S. Const. amend. XIV; N.C. Const. art. I, §§ 19, 23.

    **Am Jur 2d, Evidence § 244.**

2. **Criminal Law § 433 (NCI4th Rev.)— closing arguments— prosecutor's statements—defendant's decision not to testify**

    The prosecutor's statements to the jury that defendant had the same subpoena powers as the State to call additional witnesses, and that they could infer from defendant's failure to call witnesses that such individuals would have nothing to add was directed at defendant's failure to produce rebuttal evidence and did not constitute an indirect reference to defendant's decision not to testify on his own behalf.

    **Am Jur 2d, Trial §§ 590-604.**

Appeal by defendant from judgment entered 11 September 1995 by Judge Marcus L. Johnson in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 February 1997.

The State presented uncontroverted evidence tending to show that in or about January 1993, defendant, age twenty-four, and the victim, age seventeen, began a dating relationship that lasted approximately three months. At trial, the victim testified that she ended the relationship with defendant because he became possessive and frightened her.

On 9 July 1993, the victim was alone in her Charlotte apartment when she heard a knock at her back door. Believing it was her sister, she opened the door, and defendant forced his way into the kitchen. Defendant threatened the victim, they struggled, and he raped her.

The victim told defendant to leave, and when he refused she tried to reach for the phone to call the police. When defendant threatened to shoot her, she hit him over the head with an iron. Defendant grabbed the iron and struck the victim and they continued to struggle. The victim threatened defendant with a knife, and he pulled out a gun and again threatened to shoot her. Defendant pointed the gun at the victim's head and pulled the trigger. The victim testified that the gun clicked, but did not fire, and then defendant left the apartment.

Later the same day, defendant telephoned the victim, and after learning that she planned to go to the hospital, he threatened her again. The victim went to the hospital, was examined by a doctor, and gave her account of the incident to a nurse. The nurse collected evidence from the victim's body, prepared a standard rape kit, and delivered it to the police. Prior to defendant's arrest, the police inadvertently destroyed the rape kit.

On 12 July 1995, defendant filed a motion to dismiss and for sanctions against the State for failure to properly preserve the rape kit as potentially useful evidence. On 16 August 1995, Judge Claude S. Sitton entered an order imposing sanctions and prohibiting the State from calling as a witness the serologist who conducted laboratory testing on the contents of the rape kit. The court also stripped the State of two peremptory challenges and allowed defendant the right to final argument before the jury, regardless of whether he offered evidence in his defense.

Defendant presented no evidence at trial, he was found guilty by a jury of second degree rape, and sentenced to twenty-two years imprisonment. Defendant appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Sue Y. Little, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Daniel R. Pollitt, for defendant appellant.*

ARNOLD, Chief Judge.

**[1]** Defendant first argues that his conviction should be vacated and the charges dismissed because the police department's destruction of the rape kit violated his constitutional and statutory rights to a fair trial. This argument fails.

Defendant's argument is based on the theory that the victim fabricated the story that he raped her. He contends therefore, that DNA testing could have exonerated him by excluding him as the source of semen collected by the hospital nurse and placed in the destroyed rape kit.

Without question, the State violated the rules concerning the safekeeping of potential evidence in this case. Whenever a law enforcement officer seizes potential evidence, he must "safely keep the property under the direction of the court . . . as long as necessary to assure that the property . . . may be used as evidence [at] trial." N.C. Gen. Stat. § 15-11.1(a) (1983 & Supp. 1996). "A violation of this section does not, however, mandate dismissal of the charges against defendant." *State v. Mlo*, 335 N.C. 353, 372, 440 S.E.2d 98, 108, *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 841 (1994).

In considering the effect, if any, of the destruction of the rape kit, focus must be "on the question of whether defendant was thereby deprived of his rights to due process under the Fourteenth Amendment to the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution." *Id.*

The constitutional duty imposed on the State to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488, 81 L. Ed. 2d 413, 422 (1984). The evidence must (1) possess an exculpatory value that was apparent before the evidence was destroyed and (2) be of such character that defendant would be unable to obtain comparable evidence. *Id.* at 489, 81 L. Ed. 2d at 422.

Evidence presented at the hearing on defendant's motions to dismiss and for sanctions indicates that the exculpatory value of possible DNA testing was highly speculative. At the pre-trial hearing, the state serologist testified that although vaginal swabs and slides taken from the victim established the presence of semen, the results of standard laboratory testing were inadequate to exclude defendant as a suspect. She also testified that in her opinion, the swabs contained insufficient seminal material for effective DNA analysis.

Although on cross examination the state serologist conceded that DNA testing "could have been" conducted on the seminal material, her overall testimony indicated that the exculpatory value of any testing would be meaningless.

Even if the evidence contained in the rape kit were material to defendant's case, in the absence of a showing of "bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law" under either the Fourteenth Amendment of the United States Constitution or Article I, Sections 19 and 23 of our State Constitution. *Arizona v. Youngblood,* 488 U.S. 51, 58, 102 L. E. 2d 281, 289 (1988), *rehr'g denied,* 488 U.S. 1051, 102 L. Ed. 2d 1007 (1989); *Mlo,* 335 N.C. at 373, 440 S.E.2d at 108; *State v. Graham,* 118 N.C. App. 231, 236, 454 S.E.2d 878, 881, *cert. denied,* 340 N.C. 262, 456 S.E.2d 834 (1995).

For purposes of due process, the presence or absence of bad faith by the police turns on whether the police had knowledge of the exculpatory value before the evidence was destroyed. *Youngblood,* 488 U.S. at 56, 102 L. Ed. 2d at 288. In light of the results of the laboratory testing conducted on the victim's rape kit, there is no reason to conclude the police believed the rape kit had any exculpatory value at the time of its destruction. A careful examination of the record supports the finding of the trial judge that the rape kit was accidentally destroyed.

[2] Defendant's remaining assignments of error take exception to statements made during the prosecutor's closing arguments. He claims that the prosecutor made indirect references to his decision not to testify.

Counsel are given wide latitude in making arguments to the jury. *State v. Roberts,* 243 N.C. 619, 621, 91 S.E.2d 589, 591 (1956). "While it is true that the prosecution may not comment on defendant's failure to take the stand, 'the defendant's failure to produce exculpatory evidence or to contradict evidence presented by the State may properly be brought to the jury's attention by the State in its closing argument.'" *State v. Thompson,* 110 N.C. App. 217, 225, 429 S.E.2d 590, 594-5 (1993) (quoting *State v. Jordan,* 305 N.C. 274, 287 S.E.2d 827 (1982)).

During closing argument, the prosecutor suggested that defense counsel might argue that the State did not call certain witnesses because they would be harmful to the State's case. The prosecutor

informed the jury that defendant had the same subpoena power as the State to call witnesses, and that they could infer from defendant's failure to call additional witnesses that such individuals would have nothing to add. The prosecution's statements were directed at defendant's failure to produce rebuttal evidence, not at his failure to testify on his own behalf.

We have examined defendant's remaining assignments of error and find

No error.

Judges MARTIN, JOHN C., and TIMMONS-GOODSON concur.