ELMORE, Judge.
In this appeal, we must determine whether the trial court erred by awarding custody of the parties' two minor children to Shelly Conner Head (defendant) and providing certain terms to govern Timothy Daniel Head's (plaintiff) visitation with the children. For the reasons stated herein, we affirm the judgment of the trial court.
The record reveals the following pertinent facts: plaintiff and defendant were married on 10 November 1992. Two children were born of the marriage: a boy, J.H., and a girl, C.H. On or about 16 November 2001, plaintiff and defendant separated, with defendant taking physical custody of the minor children. On 28 November2001, plaintiff commenced the underlying litigation by filing a complaint seeking permanent sole custody of the minor children, J.H. and C.H. In his complaint, plaintiff alleged that "[d]efendant is not a fit and proper person to have custody of the subject minor children." Thereafter, on 11 December 2001, defendant obtained a domestic violence protective order pursuant to N.C. Gen. Stat. § 50B-3, which enjoined plaintiff from visiting or contacting defendant at her home or workplace and which provided terms for plaintiff's visitation of the children. Shortly thereafter, the Rutherford County Department of Social Services (DSS) filed a petition seeking non-secure custody of the children based on allegations of neglect and dependency by the parties. DSS was granted non-secure custody and the children were for a short time placed with other family members and friends, until DSS dismissed the petition. On 1 April 2002 defendant filed her answer and counterclaim, wherein she denied the material allegations of plaintiff's complaint, alleged that plaintiff "is not a fit and proper person to have custody of the minor children, nor should he be allowed unsupervised visitation," and sought permanent sole custody of the minor children for herself.
Thereafter, the matter was tried piecemeal over a period of several months from April 2002 through February 2003, with proceedings held on five separate days during that time to accommodate the trial court's schedule.[1] The transcript of theseproceedings indicates that defendant testified to multiple incidents of domestic violence directed against her by plaintiff, as well as to incidents of physical and emotional abuse and inappropriate discipline against the children by plaintiff, including the use of "pressure points" to inflict pain without leaving a mark. Plaintiff's ex-wife testified, over plaintiff's objection, that plaintiff physically abused her during their marriage in ways that did not leave marks, such as by using "pressure points" and twisting her arms and legs. Louis Gadol, Ph.D., whom the trial court admitted as an expert witness in clinical psychology, testified that he treated defendant and the minor children over a period of several months. Dr. Gadol testified that defendant told him plaintiff physically abused her throughout their marriage, and that in his opinion defendant suffered from post-traumatic stress disorder and battered woman syndrome. Dr. Gadol further testified that the minor children described being physically and emotionally abused by plaintiff, and that in his opinion J.H. suffered from post-traumatic stress disorder and attention deficit hyperactive disorder, while C.H. suffered from post-traumatic stress disorder and hyperactivity. The transcript also reveals that plaintiff denied abusing or inappropriately disciplining the minor children and denied using "pressure points." Plaintiff's mother and a family friend each testified that they had never seen any evidence plaintiff physically abused defendant or inappropriately disciplined the minor children. The videotaped deposition of Anthony Sciara, Ph.D., a clinical psychologist who interviewed plaintiff, was admitted as evidence in these proceedings. Dr. Sciara testified that while it was impossible to predict with certainty whether or not plaintiff was capable of abusive behavior, he found "no significant markers . . . for abuse of anybody" in his evaluation of plaintiff. Dr. Sciara was also critical of the methods employed in Dr. Gadol's evaluation of defendant and the minor children. The transcript also indicates that the trial court heard testimony from the guardian ad litem; a licensed professional counselor who performed a full family assessment; a clinical social worker who observed many of the visitation periods between plaintiff and the minor children; and two DSS employees who were familiar with the case.
The transcript indicates that at the conclusion of the initial proceedings in this matter on 11 April 2002, the parties agreed to entry of a temporary order granting primary custody of the minor children to defendant and allowing regular, supervised visitation by plaintiff, with the case to be reviewed in 90 days. The record contains three subsequently-entered temporary orders, entered 24 September 2002, nunc pro tunc 29 July 2002; 25 October 2002; and 20 December 2002. Each of these temporary orders continued custody of the minor children with defendant, subject to visitation by plaintiff pursuant to terms imposed by the trial court. Following the conclusion of the evidence, the trial court entered an oral order on 14 February 2003, which was subsequently reduced to writing and filed on 19 May 2003, nunc pro tunc 14 February 2003. The order contained detailed findings of fact totaling 85 in number and awarded custody of the minor children to defendant, subject to three weekly visitations by plaintiff and visitation on certain holidays, with each visitation to be supervised by plaintiff's mother or aunt. The order also required plaintiff to pay child support in accordance with the child support guidelines, and provided for review in 90 days. From this order, plaintiff appeals.[2]
At the outset, we note that plaintiff has chosen to prosecute his appeal pro se. While we are aware that self-represented parties may find the Rules of Appellate Procedure complex and difficult to follow, the Rules nevertheless serve an important role in allowing this Court to effectively evaluate the legal issuesplaced before it. In fact, our appellate courts "have long and consistently held that . . . the Rules of Appellate Procedure[] are mandatory and that failure to follow these rules will subject an appeal to dismissal." Steingress v. Steingress, 350 N.C. 64, 65, 511 S.E.2d 298, 299 (1999).
In the present case, plaintiff's assignments of error generally either purport to challenge the admissibility of certain witness testimony, or assert that the trial court erred by making certain findings of fact. Plaintiff fails in many respects to comport with the requirements of N.C.R. App. P. 28 regarding function and content of his brief. We find plaintiff's arguments on the fourteen assignments of error set forth in his brief to be at best disjointed, and at times incomprehensible, such that plaintiff's brief fails to "define clearly the questions presented to the reviewing court and to present the arguments and authorities upon which" plaintiff relies. See N.C.R. App. P. 28(a) (2004). While our review has consequently been hampered, we are nevertheless persuaded that the interests of justice will be served by addressing plaintiff's appeal.
By his first assignment of error, plaintiff contends that the trial court erred by admitting certain testimony from Dr. Gadol. In his brief, plaintiff cites to numerous portions of Dr. Gadol's testimony, then argues that in each instance the testimony was improperly admitted for a variety of reasons. However, our review of the transcript indicates that plaintiff's trial counsel did not object to any of the portions of Dr. Gadol's testimony whichplaintiff now, for the first time, contends were erroneously admitted. Plaintiff has therefore waived appellate review of these issues by his failure to object to them at trial. State v. Haselden, 357 N.C. 1, 13, 577 S.E.2d 594, 602, cert. denied, 157 L. Ed. 2d 382 (2003); see also N.C.R. App. P. 10(b)(1). This assignment of error is dismissed.
Plaintiff next argues the trial court erred by allowing his ex-wife to testify, over plaintiff's objection, that plaintiff physically abused her during their marriage by using "pressure points" to inflict pain without leaving bruises or marks. Plaintiff apparently contends the trial court admitted this testimony in violation of N.C.R. Evid. 404 (b). We disagree.
Rule 404(b) provides in pertinent part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003). Even if admissible under Rule 404(b), the probative value of such evidence must still outweigh the danger of undue prejudice from its admission in order to be admissible under Rule 403. See State v. Everhardt, 96 N.C. App. 1, 18, 384 S.E.2d 562, 572 (1989), affirmed, 326 N.C. 777, 392 S.E.2d 391 (1990). The test of admissibility examines whether the incidents are sufficiently similar and not so remote in time as to be more probative thanprejudicial under the Rule 403 balancing test. State v. Frazier, 344 N.C. 611, 615, 476 S.E.2d 297, 299 (1996). "Remoteness is less significant when the prior conduct is used to show intent, motive, knowledge, or lack of accident." State v. Aldridge, 139 N.C. App. 706, 714, 534 S.E.2d 629, 635, disc. review denied, appeal dismissed, 353 N.C. 269, 546 S.E.2d 114 (2000). The determination of whether to exclude evidence under Rule 404(b) is within the trial court's sound discretion. Id.
In the present case, defendant testified that plaintiff abused her and the minor children on numerous occasions, specifically through the use of "pressure points" in order to avoid leaving marks. Plaintiff's ex-wife testified that plaintiff abused her in precisely the same manner, also in order to avoid leaving marks, until their divorce in 1990. Our review of the transcript reveals that several witnesses testified they observed no bruises, scars, or other external marks of abuse on defendant or the minor children. On these facts, the trial court properly concluded that the challenged testimony was relevant in determining whether plaintiff had abused defendant and J.H., especially with regards to plaintiff's formulation of intent and a plan to inflict abuse in a manner that left no visible marks, as well as his knowledge of how to do so. Such a determination is undeniably a key factor in deciding the best interests of the minor children regarding custody. Moreover, we agree that the testimony's probative value was not substantially outweighed by any prejudicial effect it mighthave. We discern no abuse of discretion by the trial court in admitting this evidence. This assignment of error is overruled.
Next, plaintiff contends the trial court erred by admitting the testimony and written report of the minor children's guardian ad litem, Robert Martelle. Plaintiff appears to characterize Martelle's testimony and the contents of his written report as both improper opinion testimony and inadmissible hearsay, yet plaintiff fails to cite any authority in support of these characterizations; nor does he cite any authority to support his argument that this evidence was unduly prejudicial. Because plaintiff has failed to cite any authority in support of this assignment of error, plaintiff's argument is deemed abandoned. State v. Thompson, 110 N.C. App. 217, 222, 429 S.E.2d 590, 592 (1993); see also N.C.R. App. P. 28(b)(6) (2004) ("The body of the argument shall contain citations of the authorities upon which the appellant relies.") This assignment of error is dismissed.
By his next assignment of error, plaintiff excepts to the admission of certain testimony of two DSS employees, Laurie Horne and Lynn Hoppes. Specifically, plaintiff contends that testimony by Horne that J.H. told her plaintiff hit him, and by Hoppes that J.H. told her he witnessed plaintiff hitting defendant, constituted inadmissible hearsay and that its admission was prejudicial error. We disagree. The transcript indicates that Horne was allowed to testify regarding statements made to her by J.H., who prior toHorne's testimony had testified privately in chambers.[3] When plaintiff's counsel objected to Horne's testimony, the trial court stated that the testimony would be allowed "if, in fact, it does corroborate. If not, I won't consider it." Since J.H.'s testimony in chambers was not recorded, we are unable to determine whether the challenged portion of Horne's testimony corroborates it. However, even if Horne's testimony was not corroborative, it is well-settled that a trial court sitting without a jury is able to eliminate incompetent testimony, and a presumption arises that the trial court did so. Walker v. Walker, 38 N.C. App. 226, 228, 247 S.E.2d 615, 616 (1978). With regard to Hoppes' testimony, because the transcript indicates no objection was made at trial to any portion of her testimony, plaintiff has waived appellate review of this issue. Haselden, 357 N.C. at 13, 577 S.E.2d at 602; see also N.C.R. App. P. 10(b)(1). This assignment of error is overruled. Plaintiff next challenges a number of the trial court's findings of fact by asserting that they are "wrong" or "not true." Plaintiff apparently contends these findings were erroneous because evidence was presented at trial which was contrary to some of the trial court's findings. However, "[i]n a custody proceeding, the trial court's findings of fact are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary." Owenby v. Young, 357 N.C. 142, 147, 579 S.E.2d 264, 268 (2003). In the present case, our thorough reviewof the record reveals that the trial court's detailed and comprehensive findings of fact are supported by record evidence and that those findings, in turn, support the trial court's conclusions of law. Plaintiff's assignments of error challenging the trial court's findings are overruled.
After a careful review of defendant's remaining assignments of error, we find each to be without merit.
Affirmed.
Judges MCGEE and McCULLOUGH concur.
Report per Rule 30(e).

Plaintiff was represented by counsel at each stage of the trial. After judgment was rendered, plaintiff filed pro se motions for a new trial, for findings by the court, and to alterthe judgment, which motions were denied.

In both the "Statement of Organization of Trial Court" contained in the record on appeal and in his brief, plaintiff purports to appeal from both the order entered 19 May 2003, nunc pro tunc 14 February 2003, and the trial court's 29 May 2003 order denying plaintiff's post-trial motions for a new trial, for findings by the court, and to alter judgment. However, because the notice of appeal contained in the record references only "the final judgment of C. Randy Pool, District Court Judge entered on February 14th 2003," plaintiff's appeal from the order denying his various post-trial motions is not properly before this Court, and we consequently do not consider it. See N.C.R. App. P. 10(d); see also Bledsoe v. County of Wilkes, 135 N.C. App. 124, 125, 519 S.E.2d 316, 317 (1999) (per curiam) (holding that the Rules of Appellate Procedure . . . "[t]he Rules of Appellate Procedure "apply to everyone-whether acting pro se or being represented by all of the five largest law firms in the state.")

The discussion in chambers between the trial judge and J.H. was not recorded and is not included in the trial transcript.