STATE OF NORTH CAROLINA
v.
KASEAN DAMONT BRYSON
No. COA08-625
Court of Appeals of North Carolina
Filed February 3, 2009
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorney General Tiare B. Smiley, for the State.
Appellate Defender Staples Hughes, by Assistant Appellate Defendant Charlesena Elliott Walker, for defendant-appellant.
BRYANT, Judge.
Kasean Damont Bryson (defendant) appeals from a judgment entered upon jury verdicts finding him guilty of one count of first-degree murder, one count of possession of a firearm by a felon, two counts of assault with a deadly weapon, and from defendant's guilty plea of attaining the status of an habitual felon. We find no prejudicial error.

Facts
The State presented evidence tending to show the following: On 14 January 2006, Julius Greenwood (Greenwood) was "hanging out" with Lawrence Levi (Levi) at Pisgah View Apartments when Levi showed Greenwood a "handful" of counterfeit, one hundred dollar bills. Greenwood testified the front side of the counterfeit bills appeared to be real, but the back side "didn't look that good." At some point, Greenwood's cousin, James Howard (Howard) arrived and the three men piled into Levi's truck to drive to the Livingston Street Apartments to buy drugs.
When the men arrived at the apartment complex, Levi circled around the complex and stopped the truck at the corner. When Levi stopped, defendant pulled in behind the truck in a green sedan. Greenwood testified Levi purchased drugs from defendant and that he believed Levi gave defendant a counterfeit bill in exchange for the drugs. After the exchange, the men pulled off and Greenwood heard defendant yelling, "Hey, hey, hey." Levi did not stop the truck. Defendant got into his car and pursued the truck. When Levi turned right onto Victoria Road, defendant drove beside the truck and fired a shot towards them. Defendant then followed the truck onto Oakland Road where defendant rolled down the window in his car, fired additional shots towards the truck, then drove away. Greenwood testified Levi had difficulty steering the truck and said he had been shot. When the truck stopped, Greenwood called 911. Levi died shortly afterwards as a result of a gunshot wound.
Constance Shaw testified that she had been dating defendant since September of 2005 and that she rented a green, 2005 Honda Accord (Honda) from Enterprise Rental Company (Enterprise). Defendant was driving the Honda on 14 January 2005. Defendant returned the Honda to Enterprise on 18 January 2005.
Paige Moore (Ms. Moore), a Loss-Control Supervisor for Enterprise testified on behalf of the State that Ms. Shaw hadrented a green Honda Accord on 17 November 2005 as a replacement vehicle for a previous rental. Ms. Moore testified that the car rental contract indicated there was no damage to the Honda at the time of Ms. Shaw's rental. A branch vehicle accident report indicated the Honda was returned with scratches on both the driver and passenger side doors and scrapes on the hood.
Detective Kevin Taylor of the Asheville Police Department obtained a sample of defendant's DNA. Detective Taylor verified the location of the Honda at Ralph's Body Shop and arranged for it to be transported to the SBI lab in South Asheville. After the vehicle was processed, it was towed back to Ralph's Body Shop on 23 January 2006. The vehicle was still available for inspection at Ralph's Body Shop after 23 January and the damages to the vehicle had not been repaired.
James McClelland, a Special Agent with the North Carolina Bureau of Investigation, testified on behalf of the State. Agent McClelland processed the Honda by taking numerous pictures of the interior and exterior of the car, collecting hairs and fibers, collecting cigarette butts for DNA analysis, and performing tests for fingerprints and gunshot residue (GSR). Of the eight cigarette butts obtained from the vehicle, two of the butts contained defendant's DNA.
Defendant presented the testimony of Wayne Hill, an expert in firearms and crime scene evidence collection and preservation. Mr. Hill testified that the damage to the vehicle's hood was consistent with damage that would have been made by a firearm projectile. Mr.Hill also testified that he was unable to inspect the vehicle, but relying on photographs of the vehicle, it was his opinion that the damage to the car would have been caused by a shooter who was seated in the passenger seat of the car.
On 14 November 2007, defendant was found guilty of one count of first-degree murder, two counts of assault with a deadly weapon, and one count of possession of a firearm by a convicted felon. Defendant pled guilty to having attained the status of an habitual felon. Defendant was sentenced to a minimum of 108 months to a maximum of 139 months for two counts of assault with a deadly weapon and one count of possession of a firearm by a felon. Defendant was sentenced to a consecutive term of life imprisonment without parole for one count of first-degree murder. Defendant appeals.
On appeal, defendant argues the trial court erred by: (I) considering official statements from the FBI in denying defendant's motion to suppress gunshot residue evidence; and (II) denying defendant's motion to suppress gunshot residue evidence found in the vehicle. We find no prejudicial error.

I
Defendant argues the trial court committed prejudicial error by considering statements made by the FBI and an article in the Baltimore Sun newspaper because they were not admitted into evidence during the suppression hearing and should not have been considered as a basis for denial of defendant's motion to suppress. We disagree.
"It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." State v. Buchanan, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (quotation omitted). "Conclusions of law which are supported by findings of fact are binding on appeal." State v. Golphin, 352 N.C. 364, 409, 533 S.E.2d 168, 201 (2000), cert. denied, 532 U.S. 931, 121 S. Ct. 1379, 149 L. Ed. 2d 305 (2001). "The trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found." Id. (quotations omitted). Where the trial court's findings of fact are supported by the evidence and in turn support its conclusions of law, defendant's assignments of error should be overruled. See State v. Jones, 161 N.C. App. 615, 589 S.E.2d 374 (2003), appeal dismissed and disc. rev. denied, 358 N.C. 379, 597 S.E.2d 770 (2004).
Defendant contends he was prejudiced because " he was deprived of the opportunity to perform his own testing due to the early unauthorized release of the vehicle." However, assuming without deciding that the trial court erred by considering the FBI statement and the Baltimore Sun article, both tended to support the conclusion that GSR testing had not been abandoned by the FBI because of unreliability, defendant's main contention in support of his motion to suppress. In addition, the evidence was separate and distinct from evidence necessary to determine whether defendant was deprived of an opportunity to perform tests on the vehicle. Thus, even if the trial court erred by considering the evidence without it being properly admitted, defendant has failed to meet his burden under N.C. Gen. Stat. § 15A-1443(a) (2007) of showing he was prejudiced by such error. Therefore, defendant's assignment of error is overruled

II
Defendant argues the trial court erred by denying his motion to suppress GSR evidence because the vehicle on which the GSR test was performed was released and defendant was deprived of an opportunity to inspect and test the vehicle. We disagree.
Pursuant to N.C. Gen. Stat. § 15-11.1 (2007), a law enforcement officer is required to safely keep seized property that may be potential evidence "as long as necessary to assure that the property will be produced at and may be used as evidence in any trial." Id. Here, the SBI seized the green Honda Accord and transported the vehicle to the SBI lab for testing. After the tests were conducted, the vehicle was released to Ralph's Body Shop, where it was located prior to the seizure.
A violation of N.C.G.S. § 15-11.1 does not mandate dismissal. We must consider the effect, if any, of the release of the evidence by inquiring whether defendant was deprived thereby of his due process rights under the Fourteenth Amendment of the United States Constitution and Article I, sections 19 and 23 of the North Carolina Constitution. See State v. Mlo, 335 N.C. 353, 372, 440 S.E.2d 98, 107 (1994).
The duty to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488, 81 L. Ed. 2d 413, 422 (1984). "To meet this standard of constitutional materiality evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 488, 81 L. Ed. 2d at 422 (internal citation omitted). "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58, 102 L. Ed. 2d 281, 289 (1988).
In Mlo, law enforcement seized the victim's car from the defendant's possession during a homicide investigation. 335 N.C. at 371, 440 S.E.2d at 107. When defense counsel requested a comparison of the car's tire treads to plaster casts of vehicle tracks made at the location where the victim was found, she was informed that no comparison had been made, the vehicle had been released, and the tires on the vehicle has since been replaced. Id. The defendant contended he would have made a comparison of the tire treads on the vehicle with the plaster casts of the tracks to "see what, if anything we could determine." Id. at 372, 440 S.E.2d at 107. This Court, in upholding the trial court, held the defendant had not demonstrated any bad faith on the part of law enforcement and the exculpatory value of defendant's tests were, at best, speculative. Id. at 372, 440 S.E.2d at 108.
In the present case, law enforcement seized the vehicle defendant was driving on the night of the incident and subsequently released the vehicle after tests had been conducted. Defendant contends had the vehicle not been released, he would have been able to test the vehicle to establish whether GSR was present in higher quantities in various locations in the car and in turn establish whether the GSR was present from a prior shooting. However, as in Mlo, the exculpatory value of defendant's tests are, at best, speculative.
In addition, defendant has failed to establish bad faith on the part of law enforcement in releasing the vehicle. "For purposes of due process, the presence or absence of bad faith by the police turns on whether the police had knowledge of the exculpatory value before the evidence was destroyed." State v. Banks, 125 N.C. App. 681, 684, 482 S.E.2d 41, 43 (1997). Because of the speculative nature of the tests defendant claims he was deprived of, we can not say defendant's inability to determine whether larger amounts of GSR were contained on one side of the vehicle as opposed to another side was of such exculpatory value that law enforcement would have had knowledge of its value before the vehicle was released. Therefore, because defendant has not demonstrated bad faith on the part of law enforcement, this assignment of error is overruled. No prejudicial error.
Chief Judge MARTIN and Judge BEASLEY concur.
Report per Rule 30(e).