STATE OF NORTH CAROLINA v. KUNTA KINTE WINDLEY

No. COA04-588

(Filed 6 September 2005)

1. **Homicide— first-degree murder—instructiona—acting in concert**

   The trial court erred by instructing the jury on acting in concert with respect to the charge of first-degree murder, and defendant is entitled to a new trial on this charge, because: (1) the State presented evidence tending to show that defendant was the perpetrator of the acts; (2) the State presented no evidence that defendant acted with others in killing the victim or that anyone other than defendant shot and killed the victim; and (3) although defendant was found guilty of first-degree murder on the basis of felony murder as well as premeditation and deliberation, the trial court erroneously informed the jury that it could convict defendant of first-degree murder on the basis of acting in concert in its instructions under both theories.

2. **Constitutional Law— right to confrontation—nontestimonial evidence—law enforcement fingerprint card**

   The trial court did not violate defendant's Sixth Amendment right to confrontation by admitting into evidence law enforcement record cards allegedly bearing his fingerprint and defendant is not entitled to a new trial on the conspiracy to traffic in cocaine conviction, because the fingerprint card created upon defendant's arrest and contained in the Automated Fingerprint Identification System database was a business record and therefore nontestimonial.

Appeal by defendant from judgments entered 9 October 2003 by Judge Henry E. Frye, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 6 June 2005.

STATE v. WINDLEY

[173 N.C. App. 187 (2005)]

*Attorney General Roy Cooper, by Assistant Attorney General John G. Barnwell, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Charlesena Elliott Walker, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant appeals from judgments imposing a sentence of life imprisonment without parole upon his conviction of murder in the first degree and a concurrent sentence of not less than 175 months nor more than 219 months upon his conviction of conspiracy to traffic in cocaine. After careful review, we find no error in defendant's conviction of conspiracy to traffic in cocaine, but conclude defendant must be granted a new trial upon the charge of first-degree murder.

The State presented evidence at trial tending to show that defendant shot and killed Jamel Morehead ("Morehead") during a dispute over a cocaine transaction. Michael Branch ("Branch") and Willie Dowd, Jr. ("Dowd") testified for the State that on 19 January 2002, defendant met with them and Morehead at a residence in Kernersville, North Carolina, in order to exchange twenty thousand dollars for a kilogram of cocaine. Defendant gave the twenty thousand dollars to Morehead, who then departed the residence and returned approximately forty-five minutes later. Branch and Dowd remained with defendant. When Morehead returned, he gave defendant a small package wrapped in duct tape. When defendant opened the package, he discovered it contained cornstarch instead of cocaine. Morehead and defendant began arguing. Morehead told defendant he had never dealt cocaine before, did not realize the package contained cornstarch, and that he would reimburse defendant the twenty thousand dollars. Defendant removed a nine-millimeter handgun from the waistband of his pants, followed Morehead into a bedroom, and shot him numerous times.

Defendant's fingerprint was found on the frame of the door of the Kernersville residence. Bullets and bullet casings recovered from the scene and from Morehead's body matched bullet casings seized at the scene of a 20 March 2001 shooting incident between defendant and another individual in Beaufort, North Carolina.

Defendant testified that he was acquainted with Branch and knew him to be a drug dealer. According to defendant, he followed Branch to the Kernersville residence on 19 January 2002 in order to purchase

marijuana. Inside the residence, he observed two other men, but did not know who they were and was not introduced to them. Branch informed defendant that it would take at least thirty minutes for the individual with the marijuana to arrive. However, defendant left before the marijuana arrived because he had to pick up his girlfriend at the bus station. Defendant, his brother, and his girlfriend drove to New York the following morning in order to attend the funeral of a friend. Defendant's brother and defendant's girlfriend both corroborated his testimony, testifying that they drove to New York with defendant. Defendant denied having ever met Morehead and denied shooting him. Defendant also denied conspiring with anyone to purchase cocaine. Defendant admitted to the 20 March 2001 exchange of gunfire in Beaufort, but stated he fired his weapon in self-defense. Defendant testified he sold his gun to Branch several months after the 20 March 2001 shooting.

Following the presentation of evidence, the State requested the trial court to instruct the jury on the theory of acting in concert as a part of the murder and conspiracy to traffic in cocaine charges. Defendant objected to the instruction on the ground that there was no evidence of acting in concert. The trial court initially expressed some reservation as to the applicability of the doctrine:

> Let me tell you what my concerns are on that . . . . when I look at the formation of why in the legal field I ought to use acting in concert is if you have other people who do any of the acts and because, just like we had the bank robbery case, the bank robber goes in and actually does the robbery, and you have the person as a lookout, you've got the one in the car, so you create acting in concert, and when you have the actual perpetrator because of all of the elements that I look at, they always refer to everybody except for the perpetrator since they do all the acts necessary. And at this point I don't think acting in concert would apply for this particular case since all of the evidence is from the State is that this is the person who did the shooting. The only thing you have to consider is the other two people what their participation was.

The trial court eventually overruled defendant's objection, however, and instructed the jury it could convict defendant of first-degree murder on the theories of both premeditation and deliberation and felony murder if it found he acted in concert with others.

**[1]** Defendant contends the trial court erred when it instructed the jury on the legal doctrine of acting-in-concert with respect to the charge of first-degree murder. He argues the State failed to present substantial evidence that he acted with another person in perpetrating the offense. After careful review of the evidence, we agree there was no evidence from which a reasonable jury could find that defendant acted in concert with others in the murder of Morehead.

The doctrine of acting in concert may be summarized as follows:

"If 'two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof.' "

*State v. Mann*, 355 N.C. 294, 306, 560 S.E.2d 776, 784 (quoting *State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991)), *cert. denied*, 537 U.S. 1005, 154 L. Ed. 2d 403 (2002). Under the doctrine, "[a] person is constructively present during the commission of a crime if he or she is close enough to be able to render assistance if needed and to encourage the actual perpetration of the crime." *Id.* (quoting *State v. Willis*, 332 N.C. 151, 175, 420 S.E.2d 158, 169 (1992)).

In *State v. Brown*, 80 N.C. App. 307, 311, 342 S.E.2d 42, 44 (1986), this Court granted a new trial where the trial court erroneously instructed the jury on the theory of acting in concert. The State presented evidence tending to show the victim was beaten by a number of people during an altercation. Although the defendant was present at the scene, he was not involved in the altercation. The victim pulled out a gun and fired shots into the ceiling. Several people began struggling with the victim for possession of the gun. The victim was wrestled to the floor, where he fired several more shots. For the next several minutes a group, variously estimated at between six and fifteen people, kicked, stomped and struck the victim with various objects including chairs, pool cues and their feet. The defendant was not observed among this group of people. Following the beating, the victim was left unconscious on the floor and the defendant was observed with a bullet wound to his leg.

Emergency response teams arrived at the scene and started to transport the injured to area hospitals. The victim and the defendant were placed in the same ambulance. Once inside the ambulance, the

defendant beat the prone victim, resulting in his death. At trial, the court instructed the jury it could find the defendant guilty upon a theory of acting in concert. The jury found the defendant guilty of voluntary manslaughter.

On appeal, the defendant argued the acting in concert instructions permitted the jury to convict him on the theory that he aided and abetted the other persons involved in the beating of the victim, a theory unsupported by the evidence. The *Brown* Court agreed, stating that

> [t]here is no evidence that defendant acted as an aider and abettor to other persons in beating [the victim]. All the evidence shows that defendant acted independently of the others in his assault on the victim. Thus, there was no basis in the evidence for the court to instruct the jury on the law of aiding and abetting.

*Id.* at 311, 342 S.E.2d at 44. The Court noted that "[i]t is generally error, prejudicial to defendant, for the trial court to instruct the jury upon a theory of a defendant's guilt which is not supported by the evidence." *Id.*

As was the case in *Brown*, the State presented evidence in the present case tending to show that defendant was the perpetrator of the acts. The State presented no evidence, however, that defendant acted with others in killing Morehead, or that anyone other than defendant shot and killed Morehead. The trial court's error in instructing the jury requires a new trial for defendant.

The State argues that even if there was no evidence of concerted action, the trial court's instruction nevertheless did not prejudice defendant in that the jury found him guilty of first-degree murder, not only on the basis of felony murder but also on the basis of premeditation and deliberation. Citing *State v. Mays*, 158 N.C. App. 563, 577, 582 S.E.2d 360, 369 (stating that "any error in allowing a jury to consider felony murder does not require a new trial if the jury also found the defendant guilty based on premeditation and deliberation"), *disc. review denied*, 357 N.C. 510, 588 S.E.2d 379 (2003), *cert. denied*, 358 N.C. 547, 599 S.E.2d 913 (2004), and *State v. McKeithan*, 140 N.C. App. 422, 434, 537 S.E.2d 526, 534 (2000) (same), *appeal dismissed and disc. review denied*, 353 N.C. 392, 547 S.E.2d 35 (2001), the State contends that any error in the instructions for felony murder was harmless, because the evidence supported the conviction based on premeditation and deliberation. The State's position would be correct

if the flawed concerted action instructions were addressed to the felony murder charge only. In *Mays* and *McKeithan,* the error in instructing on the felony murder charge was harmless in that the jury properly found the defendant guilty on the basis of premeditation and deliberation. Here, however, the trial court erroneously informed the jury it could convict defendant of first-degree murder on the basis of acting in concert in its instructions under both the felony murder *and* premeditation and deliberation theories. The trial court clearly instructed the jury that the acting in concert doctrine could be used to apply to the premeditation and deliberation charge:

> Now Members of the Jury, for a person to be guilty of a crime it is not necessary that he personally do all of the acts necessary to constitute the crime. If two or more persons join in a common purpose to commit conspiracy to traffic by possession of four hundred grams of cocaine, each of them, if actually present or constructively present is not only guilty of that crime if the other person commits the crime, he is also guilty of any other crime committed, that being murder by the other in pursuance of a common purpose . . . to commit conspiracy to possess four hundred grams or more of cocaine, or as a natural or probable consequence thereof.
>
> . . . .
>
> Members of the Jury, if you find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant acting either by himself *or acting together with others,* acted with malice, killed the victim with a deadly weapon, thereby proximately causing the victim's death, and the Defendant intended to kill the victim, and that the Defendant acted after premeditation and deliberation, it would be your duty to return a verdict of guilty of first-degree murder on the basis of malice, premeditation and deliberation.
>
> . . . .
>
> Again I read to you, if you find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant *acting either by himself or acting together with others* committed conspiracy to possess four hundred grams or more of cocaine, and that while committing conspiracy to posses[] four hundred grams or more of cocaine the Defendant *or acting together with others* killed the victim, and the Defendant's act

STATE v. WINDLEY

[173 N.C. App. 187 (2005)]

was a proximate cause of the victim's death, it would be your duty to return a verdict of guilty of first-degree murder under the felony murder rule.

Because the trial court's instructions for felony murder and murder based on premeditation and deliberation were both flawed, the jury's conviction of defendant for first-degree murder based on premeditation and deliberation is equally flawed. Defendant must be granted a new trial as to the murder conviction.

[2] Defendant further argues he must be granted a new trial as to the conspiracy conviction. He contends the trial court violated his Sixth Amendment right to confrontation by admitting into evidence law enforcement record cards allegedly bearing his fingerprints. Defendant argues the fingerprint cards were "testimonial" evidence as defined by the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004). We disagree.

Sergeant Darrell Hicks of the Forsyth County Sheriff's Office testified as an expert in the field of latent fingerprint lifting and fingerprint identification. Sergeant Hicks testified he obtained several latent fingerprints at the Kernersville residence crime scene and compared them to fingerprints contained in a computer system database known as "AFIS" or "Automated Fingerprint Identification System." Sergeant Hicks stated the AFIS consists "of a known database of fingerprints of criminal arrest cards of people [who've] been arrested in the state." Using the database, Sergeant Hicks received a reference to defendant. Sergeant Hicks then compared one of the latent fingerprints he obtained at the crime scene to the actual fingerprint card containing defendant's fingerprints. Sergeant Hicks testified that such fingerprint cards were kept in the normal course of business in the police record files. According to Sergeant Hicks, the fingerprint obtained from the door of the Kernersville residence matched the fingerprint card containing defendant's fingerprints. Defendant objected to the admission of the fingerprint card, but the trial court admitted the card as a business record. Defendant argues that admission of the fingerprint card, without testimony by the police officer who made the fingerprint card, violated his confrontation rights under *Crawford*. We do not agree.

"Where testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68, 158 L. Ed. 2d at 203. Under *Crawford*, we must determine: "(1) whether the evidence

admitted was testimonial in nature; (2) whether the trial court properly ruled the declarant was unavailable; and (3) whether defendant had an opportunity to cross-examine the declarant." *State v. Clark*, 165 N.C. App. 279, 283, 598 S.E.2d 213, 217, *disc. review denied*, 358 N.C. 734, 601 S.E.2d 866 (2004). Notably, the *Crawford* Court indicated that business records are nontestimonial. *Crawford*, 541 U.S. at 56, 158 L. Ed. 2d at 195.

In the instant case, we conclude the fingerprint card created upon defendant's arrest and contained in the AFIS database was a business record and therefore nontestimonial. *See State v. Carroll*, 356 N.C. 526, 574, 573 S.E.2d 899, 913 (2002) (stating that fingerprint cards are "clearly admissible" under the business records exception to the hearsay rule), *cert. denied*, 539 U.S. 949, 156 L. Ed. 2d 640 (2003); *State v. Arita*, 900 So.2d 37, 45 (La. App. Ct. 2005) (stating that a latent fingerprint admitted pursuant to public record and report exception to the hearsay rule "was clearly non-testimonial"). We overrule this assignment of error.

In view of our decision, we deem it unnecessary to address defendant's remaining assignments of error.

First Degree Murder—New Trial.

Conspiracy to Traffic in Cocaine—No Error.

Judges WYNN and TIMMONS-GOODSON concur.