STATE OF NORTH CAROLINA v. HUU THE CAO, DEFENDANT

No. COA05-191

(Filed 17 January 2006)

**1. Constitutional Law; Evidence— laboratory report—admission without lab tech—right to confront witnesses**

Laboratory reports or notes of a laboratory technician prepared for use in a criminal prosecution are nontestimonial business records (and thus admissible without the technician) only when the testing is mechanical, as with the Breathalyzer test, and the information contained in the documents is objective and does not involve opinions or conclusions drawn by the analyst. The record in this case did not contain enough information about the procedures involved in identifying cocaine to allow a determination of whether that portion of the test meets the criteria. However, there was no prejudice because defendant did not challenge the identity of the substance at trial, but portrayed himself instead as a homeless person making a delivery.

**2. Sentencing— appellate review—insufficient evidence as a matter of law—no objection at trial**

Error based on insufficient evidence as a matter of law does not require an objection at a sentencing hearing to be preserved for appellate review.

**3. Sentencing— out-of-state convictions—computer printouts—equivalence to N.C. felonies**

Computer printouts were sufficient to prove defendant's out-of-state prior convictions during sentencing, but the State did not satisfy its burden of proving that defendant's out-of-state convictions were felonies. N.C.G.S. § 15A-1340.14(f)(4).

Judge McGEE concurring in part and dissenting in part.

Appeal by Defendant from judgment entered 27 July 2004 by Judge Timothy S. Kincaid in Superior Court, Mecklenburg County. Heard in the Court of Appeals 18 October 2005.

**STATE v. CAO**

[175 N.C. App. 434 (2006)]

*Attorney General Roy Cooper, by Assistant Attorney General Richard G. Sowerby, for the State.*

*Russell J. Hollers III, for defendant-appellant.*

WYNN, Judge.

"Where testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68, 158 L. Ed. 2d 177, 203 (2004). In this case, Defendant contends the trial court committed plain error in admitting laboratory reports without the testing laboratory technician present for cross-examination and therefore violated his Sixth Amendment right to confrontation. We hold that even assuming error by the trial court in the admission of the laboratory reports concluding that the substances obtained from Defendant were cocaine, any error was harmless beyond a reasonable doubt.

However, we remand this case for resentencing because the State failed to satisfy its burden that Defendant's prior out-of-state convictions were felonies and that the crimes were substantially similar to crimes classified as felonies in North Carolina.

Facts relevant to this appeal show that on 1 March 2004, Detective Eric Duft went to a neighborhood in Charlotte, North Carolina, which was known for drug sales, for the purpose of trying to buy crack cocaine. A man named Guadalupe Morales approached his car and asked what he wanted. Detective Duft replied he wanted crack cocaine. In response, Morales summoned Defendant Huu The Cao, who appeared from behind a dumpster. Defendant asked Detective Duft what he wanted, and Detective Duft responded that he wanted forty dollars worth of crack cocaine. After four or five minutes, Defendant returned with a bag of crack cocaine and completed the sale.

Three days later, Detective Duft returned to the same location and asked Morales where he could find Defendant so that he could buy more crack cocaine. Morales called for Defendant, who came running from nearby apartments. Detective Duft again gave Defendant money, and Defendant obtained and sold crack cocaine to Officer Duft.

After the drug transactions, Detective Duft placed the crack cocaine he received from Defendant in an evidence envelope, sealed

it, turned it over to property control, and requested that the substances be tested for the presence of cocaine. The testing laboratory technician did not testify at trial; instead, the State had Detective Duft read the results of the tests to the jury.

The jury found Defendant guilty of two counts of selling cocaine and two counts of possession with intent to sell or deliver cocaine. The trial court classified Defendant as a Level IV offender and sentenced him to consecutive sentences of sixty-two to seventy-six months imprisonment.

[1] On appeal to this Court, Defendant argues that the trial court committed plain error by permitting Detective Duft to read into evidence laboratory reports identifying the substances purchased from Defendant as cocaine without the testing laboratory technician present for cross-examination. Defendant argues that under the United States Supreme Court's decision in *Crawford*, 541 U.S. 36, 158 L. Ed. 2d 177, such reading violated his Sixth Amendment right to confront the witnesses against him.

"Where testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *See Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203. However, "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law[.]" *Id.* Therefore, the pivotal question in this instance is whether under the *Crawford* analysis, the laboratory reports were testimonial or nontestimonial in nature.

Although the *Crawford* court expressly declined to provide a comprehensive definition of "testimonial," *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, it did provide the following analysis:

> [v]arious formulations of this core class of 'testimonial' statements exist: 'ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' (citation omitted); 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' (citation omitted); 'statements that were made under circumstances which would lead an objective witness reasonably to

believe that the statement would be available for use at a later trial,' (citation omitted).

*Crawford,* 541 U.S. at 51-52, 158 L. Ed. 2d at 192-93.

Our Supreme Court recently addressed the question of what constitutes testimonial evidence under *Crawford* in *State v. Lewis,* 360 N.C. 1, 619 S.E.2d 830 (2005). The Court observed that "[t]he United States Supreme Court determined in *Crawford* that 'at a minimum' the term testimonial applies to 'prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to *police interrogations.*" *Id.* at 15, 619 S.E.2d at 839, (quoting *Crawford,* 541 U.S. at 68, 158 L. Ed. 2d at 203) (emphasis in original). The Court then addressed what falls within each of these categories. While it is debatable whether a laboratory report requested by the police constitutes a response to structured police questioning—which *Lewis* holds constitutes "police interrogation" within the meaning of *Crawford,* 360 N.C. at 17, 619 S.E.2d at 840—the *Lewis* Court's analysis of "police interrogations" persuades this Court to conclude that laboratory reports, in some instances, may constitute "testimonial evidence."

In *Lewis,* the Court reviewed the admissibility of statements made by the now deceased victim to an officer who responded to the scene of a crime and that same witness' identification of the defendant in response to a photographic lineup. The Court held that a trial court must consider two factors in determining whether statements made to the police constitute testimonial evidence: (1) the stage of the proceedings at which the statement was made and (2) the declarant's knowledge, expectation, or intent that his or her statements would be used at a subsequent trial. *Id.* at 19-21, 619 S.E.2d at 842-43.

With respect to the first factor, the Court distinguished between statements "made as a result of a patrol officer's preliminary questioning," which would "likely be nontestimonial," and statements "when police questioning shifts from mere preliminary fact-gathering to eliciting statements for use at a subsequent trial," at which point "any statements elicited [would be] testimonial in nature." *Id.* at 19-20, 619 S.E.2d at 842. As for the declarant's statement of mind, the Court held that the question is whether "considering the surrounding circumstances, . . . a reasonable person in the declarant's position would know or should have known his or her statements would be used at a subsequent trial." *Id.* at 21, 619 S.E.2d at 843. The test is an objective one. *Id.*

The *Lewis* Court concluded that the statements to the patrol officer were not barred by the Confrontation Clause, but the subsequent identification was. The Court explained:

By conducting the photographic lineup, [the detective] crossed the line between making preliminary observations about an alleged crime and structured police questioning. The lineup served as a continued investigation, based on and occurring after the preliminary investigation conducted by [the patrol officer]. At the time of the lineup, [the detective] knew what allegedly happened to [the victim] and had previously narrowed the scope of potential suspects. His purpose in conducting the interview was to establish probable cause to obtain a warrant specifically for [the defendant's] arrest. Additionally, at the time of the interview, based upon the specific circumstances, [the victim] knew an investigation was underway, and a reasonable person in [the victim's] position would expect her statements could be used at a subsequent trial. Thus, the circumstances surrounding [the detective's] interview of [the victim] at the hospital tip the scales in favor of the interview's being structured police questioning.

*Id.* at 24, 619 S.E.2d at 845.

We cannot discern a meaningful distinction between Detective Duft's request in this case for the Charlotte-Mecklenburg crime laboratory to test the substances he obtained from Defendant for the presence of cocaine and the detective's request in *Lewis* for the victim to respond to a photographic lineup and identify the defendant. The sole purpose of Detective Duft's request was to obtain evidence to support the charges at trial, and a reasonable lab technician would expect that his or her conclusions would be used at the subsequent trial. *See People v. Lonsby*, 2005 Mich. App. LEXIS 2533 (No. 250559) (13 Oct. 2005) (holding a non-testifying serologist's notes and lab report constitute testimonial hearsay and their introduction through another witness violated the Confrontation Clause); *People v. Rogers*, 8 A.D.3d 888, 891, 780 N.Y.S.2d 393, 397 (2004) ("Defendant had the right to cross-examine witnesses regarding the authenticity of the sample for foundation purposes [and] . . . regarding the testing methodology . . . . Because the [blood] test was initiated by the prosecution and generated by the desire to discover evidence against defendant, the results were testimonial. . . .")

This view is consistent with *Crawford* itself. The *Crawford* Court stressed first that the fact evidence may be generated by law enforce-

ment does not mitigate Confrontation Clause concerns: "Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse—a fact borne out of time and again throughout a history with which the Framers were keenly familiar." *Crawford*, 541 U.S. at 56, 158 L. Ed. 2d at 196. Further, the Court confirmed that the key focus of the Confrontation Clause is ensuring the availability of cross-examination. The Court stated:

> To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.

*Id.* at 61, 158 L. Ed. 2d at 198.

However, *Crawford* suggests that business records "by their nature" may not be testimonial. *Id.* at 56, 158 L. Ed. 2d at 195-96. *See also State v. Windley*, 173 N.C. App. 187, 194, 617 S.E.2d 682, 686 (2005) (holding that a fingerprint card maintained in a national database, the Automated Fingerprint Identification System ("AFIS"), was a business record and, therefore, nontestimonial).

In *State v. Smith*, 312 N.C. 361, 323 S.E.2d 316 (1984), our Supreme Court addressed the admissibility of an affidavit setting out the results of a Breathalyzer test. The Court observed:

> In short, the scientific and technological advancements which have made possible this type of analysis have removed the necessity for a subjective determination of impairment, so appropriate for cross-examination, and have increasingly removed the operator as a material element in the objective determination of blood alcohol concentration.

*Id.* at 373, 323 S.E.2d at 323. In holding that the chemical analyst's affidavit was "precisely the sort of evidence that the traditional business and public records exceptions to the hearsay rule intended to make admissible," *id.* at 374-75, 323 S.E.2d at 324, the Court stressed:

> In the present case, N.C.G.S. § 20-139.1(e1) permits the chemical analyst to attest by affidavit to certain objective facts which he or

she has a statutory duty to record after complying with certain procedures and guidelines adopted by the Commission for Health Services. *The analyst is at no time called upon to render an opinion or to draw conclusions.* The analyst is required at the time of testing to record the alcohol concentration *as indicated by the machine,* the time of collection, the type of analysis performed, the type and status of his permit, and the date of the most recent preventive maintenance.

*Id.* at 374, 323 S.E.2d at 324 (internal citation omitted) (emphasis added). The Court concluded that the nature of the test for blood alcohol concentration and the objective nature of the facts recorded in the affidavit rendered "the need for *and* the utility of confrontation at trial in District Court appear minimal." *Id.* at 376, 323 S.E.2d at 324 (emphasis in original).

Based on our Supreme Court's decisions in *Lewis* and *Smith,* we hold that laboratory reports or notes of a laboratory technician prepared for use in a criminal prosecution are nontestimonial business records only when the testing is mechanical, as with the Breathalyzer test, and the information contained in the documents are objective facts not involving opinions or conclusions drawn by the analyst.[1] While cross-examination may not be necessary for blood alcohol concentrations, the same cannot be said for fiber or DNA analysis or ballistics comparisons, for example.

In the case *sub judice,* the laboratory reports' specification of the weight of the substances at issue would likely qualify as an objective fact obtained through a mechanical means. The record on appeal, however, does not contain enough information about the procedures involved in identifying the presence of cocaine in a substance to allow this Court to determine whether that portion of the testing meets the same criteria.

Nevertheless, even assuming error by the trial court in the admission of the laboratory reports concluding that the substances ob-

---

1. *See also* N.C. Gen. Stat. § 8C-1, Rule 803(8) (2004) (emphases added) ("Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, *excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel,* or (C) in civil actions and proceedings and *against the State in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law,* unless the sources of information or other circumstances indicate lack of trustworthiness.")

tained from Defendant were cocaine, any error was harmless beyond a reasonable doubt. Defendant seeks plain error review because he did not object to the admissibility of the reports or to the testimony by Detective Duft about the report. *See State v. Parker*, 350 N.C. 411, 427, 516 S.E.2d 106, 118 (1999) (plain error is error "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached."). Indeed, Defendant never disputed that the material was cocaine. He chose not to defend on that basis, but rather focused on portraying himself as a homeless person making a delivery in exchange for beer and cigarettes. Since the identity of the substance was not challenged, the admission of the laboratory reports was harmless error. *See State v. Edwards*, —— N.C. App. ——, ——, 621 S.E.2d 333, 337 (2005), (holding that failure to require production of DNA testing protocols was harmless beyond a reasonable doubt when the defendant did not dispute that he committed the crimes at issue, but rather argued that he was mentally impaired); *State v. Thompson*, 110 N.C. App. 217, 225, 429 S.E.2d 590, 595 (1993) (court's failure to allow defendant's fingerprint expert to testify was harmless error when the prosecution did not need to use the fingerprints to link defendant to the crime). Defendant's assignment of error is therefore overruled.

[2] Defendant next argues that the trial court committed reversible error in sentencing him as a Level IV offender because the State did not prove the existence of the out-of-state convictions, that the convictions were for felonies, and that one of the convictions was substantially similar to a North Carolina Class I felony.

Preliminarily, we address the State's contention that Defendant did not properly preserve this error for appellate review because he failed to object to the prosecution's calculation of his prior record level at the sentencing hearing. However, this assignment of error is not evidentiary; rather, it challenges whether the prosecution met its burden of proof at the sentencing hearing. Error based on insufficient evidence as a matter of law does not require an objection at the sentencing hearing to be preserved for appellate review. *See* N.C. Gen. Stat. § 15A-1446(d)(5), (18) (2004). We therefore address the merits of Defendant's argument.

[3] North Carolina General Statute section 15A-1340(e) provides:

Except as otherwise provided in this subsection, a conviction occurring in a jurisdiction other than North Carolina is classified

as a Class I felony if the jurisdiction in which the offense occurred classifies the offense as a felony, or is classified as a Class 3 misdemeanor if the jurisdiction in which the offense occurred classifies the offense as a misdemeanor. . . . If the State proves by the preponderance of the evidence that an offense classified as a misdemeanor in the other jurisdiction is substantially similar to an offense classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points.

N.C. Gen. Stat. § 15A-1340.14(e) (2004). Section 15A-1340.14(f) provides that a prior conviction may be proved by: (1) stipulation of the parties; (2) an original or copy of the Court record of the prior action; (3) a copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or the Administrative Office of the Courts; or (4) any other method found by the Court to be reliable. N.C. Gen. Stat. § 15A-1340.14(f) (2004).

Here, the State submitted computer printouts as evidence of Defendant's prior criminal convictions from the United States and Texas. The documents state that they contain information from "NLETS", "Crime Records Service DPS Austin TX" and the FBI. The FBI printout contains a detailed description of Defendant, including his fingerprint identifier number and FBI number, sex, race, birth date, height and weight. It also indicates that Defendant has been convicted of multiple offenses and has an additional criminal history record in Texas. We hold that these computer printouts are sufficient to prove Defendant's prior convictions under section 15A-1340.14(f)(4). *See State v. Rich,* 130 N.C. App. 113, 116, 502 S.E.2d 49, 51, *disc. review denied,* 349 N.C. 237, 516 S.E.2d 605 (1998) (holding that a computerized printout with the heading "DCI Record" and containing various identifying characteristics of the defendant was competent to prove prior convictions).

However, the State has failed to satisfy its burden to prove that Defendant's out-of-state convictions were felonies. Although it can be inferred from the FBI printouts that Defendant is a convicted felon, the State failed to present any evidence that Defendant has been convicted of four out-of-state felonies as calculated on the State's prior record level worksheet. Furthermore, the State presented no evidence to show that Defendant's convictions in Texas were substantially similar to corresponding Class I North Carolina felony offenses. Although the State presents an argument in its brief that Texas Penal Code § 31.07 (2002) states that a conviction for unauthorized use of

a vehicle is classified as a "State jail felony," no such argument was presented to the trial court during Defendant's trial. Instead, the trial court considered only the State's worksheet and a copy of Defendant's criminal record, and improperly concluded that "the State has satisfied the Court by the applicable standard that the [d]efendant has 13 prior conviction points," and then sentenced him as a Level IV offender.

Thus, this case is remanded for a resentencing hearing, at which the State must prove by the preponderance of the evidence that Defendant's out-of-state convictions are felonies, and that the felonious convictions are substantially similar to North Carolina offenses that are classified as Class I felonies or higher. *See State v. Morgan*, 164 N.C. App. 298, 309, 595 S.E.2d 804, 812 (2004) (citing *State v. Hanton*, 140 N.C. App. 679, 690, 540 S.E.2d 376, 383 (2000)). If the State is unable to satisfy its burden, the out-of-state felony convictions must be classified no higher than Class I felonies for sentencing purposes. The State and Defendant may offer additional evidence at the resentencing hearing. *Id.*

No error in part; Remanded for resentencing.

Judge GEER concurs.

Judge McGEE concurs in part and concurs in the result in part.

McGEE, Judge, concurring in part and concurring in the result in part.

I fully concur with the majority opinion except for the reasons set forth in the dissenting portion of my opinion filed 3 January 2006 in *State v. Hanton*, 175 N.C. App. 250, 623 S.E.2d 600 (2006). I conclude that upon remand, a determination of whether defendant's out-of-state convictions are substantially similar to North Carolina offenses should be determined by the trial court in the event the trial court can conduct a comparison of the elements of the two states' statutes without undertaking any type of factual analysis of the circumstances underlying defendant's prior convictions. However, in the event a factual inquiry into, or analysis of, defendant's conduct is necessary to resolve whether defendant would have been convicted under a similar North Carolina law, that determination must be made by a jury under *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004), and *Shepard v. United States*, 544 U.S. ——, 161 L. Ed. 205 (2005).