McCULLOUGH, Judge.
 

 Christopher Lynn Hallum ("defendant") appeals from judgments entered upon his convictions for obtaining property by false pretenses, possession of stolen goods, and attaining habitual felon status. For the following reasons, we find no error in part and reverse in part.
 

 I.
 
 Background
 

 Defendant was arrested at Biltmore Iron & Metal Company "BIMCO" on 16 October 2013. In three separate indictments returned on 7 April 2014, a Buncombe County Grand Jury indicted defendant on one count of obtaining property by false pretenses in violation of N.C. Gen.Stat. § 14-100, one count of possession of stolen goods in violation of N.C. Gen.Stat. § 14-71.1, and for attaining the status of a habitual felon.
 
 [1]
 
 Defendant's cases were joined and called for trial in Buncombe County Superior Court on 30 September 2014, the Honorable Marvin P. Pope, Judge presiding.
 

 The State's evidence at trial tended to show that on the afternoon of 14 October 2013, defendant showed up at the Glenrock Hotel renovation site in Asheville in search of scrap metal that he could sell. Terry Christie, an electrician completing the electrical portion of the renovation, showed defendant some four-inch rigid-steel conduit that had been torn out of the building and other scrap metal that defendant could take from behind the building. Christie specifically told defendant he could not have a spool of MC cable, described as copper cables in an aluminum jacket and referred to at times as flexible aluminum conduit, that defendant inquired about. After being shown the scraps behind the building, defendant told Christie "[h]e was going to have to come back with his truck and trailer to get it[ ]" and then left.
 

 When Christie later left the renovation site for the day, his work materials were locked in storage beneath the stairs and the doors to the building were locked.
 

 The next morning when Christie returned to work, 15 October 2013, the spool of MC cable was nowhere to be found. Eight smaller rolls of cooper No. 12 wire were also missing. As Christie walked out the backdoor to look around, he noticed the four-inch rigid-steel conduit and other scraps he had shown defendant were gone. Christie testified that "[t]here was nothing out there. They had cleaned everything out there that day." Christie also testified that the spool of MC cable was "pretty heavy, and it looked like somebody had taken it and rolled it out across the ground. And the ground was wet, so it left an impression about a-half inch into the ground." There was also evidence that one of the backdoors to the building was ajar and appeared to have been jimmied open with a pry tool.
 

 After informing his shop of the missing supplies, Christie called the police. Christie was able to give a vague description of defendant to the officers who responded and took the initial report.
 

 *297
 
 At roughly two o'clock in the afternoon on 15 October 2013, defendant sold scrap metal to BIMCO. Blake Cloninger, Vice-President of BIMCO, testified about two separate transactions taking place on 15 October 2013. BIMCO's records show that defendant sold 960 pounds of steel in the first transaction. Cloninger more precisely described the steel as "pipes" based on a picture of the materials that was taken when the materials were weighed at BIMCO. BIMCO's records show that defendant sold "[s]ome insulated copper, insulated aluminum, MLC-that's a grade of aluminum-and some No. 1 copper [ ]" in the second transaction. When shown a picture of what Christie referred to as MC cable, Cloninger testified that the MC cable would qualify as MLC.
 

 Travis Barkley, a Detective with the Asheville Police Department, was assigned the case and conducted his investigation on 16 October 2013. On that morning, Barkley went to the renovation site, talked to Christie and other workers, and observed what Barkley referred to as "the crime scene." Because the police had very limited information and not enough for an identification, Barkley requested that Christie and other workers pay more attention if they saw defendant in order to get a better description.
 

 Evidence was introduced at trial showing that defendant also sold materials to BIMCO in two transactions shortly after two o'clock in the afternoon on 16 October 2013. BIMCO's records showed that in the first transaction, defendant sold "insulated copper, stripped copper wire, and some aluminum." In the second transaction, defendant sold "[s]ome insulated copper."
 

 That same afternoon, Christie spotted defendant going through the dumpster behind the renovation site and called Barkley. At that time, Christie was able to give a detailed description of a tattoo on defendant's neck and provide a license tag number for a green Explorer that defendant was driving. Barkley then began to call metal buyers in the area to see if they knew anyone matching the description. Barkley's first call was to BIMCO, where an employee was able to positively identify defendant by name and indicated defendant had been in several times in the last couple days. Barkley thought the description of the items defendant sold to BIMCO sounded similar to what was stolen and asked the BIMCO employee to give him a call if defendant returned.
 

 A BIMCO employee called Barkley later that day and told Barkley that defendant had returned. Barkley, who at the time was tied up with a different investigation, had dispatch send uniformed officers to BIMCO to detain defendant until he was able to get there. When Barkley arrived, defendant was standing next to a green Explorer. A woman, who Barkley later learned was defendant's girlfriend, was in the driver's seat. Once at BIMCO, Barkley received an update from the responding officers and spoke to BIMCO employees about items defendant had recently brought in. Because Barkley was unfamiliar with the items, Barkley called Christie and requested that he come to BIMCO. When Christie arrived, Christie was able to identify defendant and the four-inch rigid-steel conduit and MC cable in pictures taken by BIMCO.
 

 Barkley also spoke with defendant and defendant's girlfriend. Defendant initially denied anything about spools of wire. Yet, upon further questioning, defendant got upset and his story began to change. Defendant indicated he got a spool from a Mr. Daniel Atchley and figured it was probably stolen. Barkley was never able to determine if Mr. Atchley was involved. The spool was never recovered, but Cloninger testified that he remembered seeing a spool in the back of defendant's Explorer in the course of the 15 October 2013 transactions and believed there was still aluminum conduit on the spool.
 

 Defendant moved to dismiss all the charges at the close of the State's evidence, and then renewed the motion after he decided not to put on further evidence in his defense. The trial court denied defendant's motions.
 

 The jury was instructed on the charges and given the case on 1 October 2014. Within half an hour, the jury returned verdicts finding defendant guilty of attaining property by false pretenses and possession of stolen goods. Upon hearing further evidence from
 
 *298
 
 the State in the subsequent habitual felon stage, the jury returned an additional verdict finding defendant guilty of attaining habitual felon status. The trial court then entered a judgment sentencing defendant for obtaining property by false pretenses as a habitual felon to a term of 97 to 129 months imprisonment. The trial court entered a separate judgment sentencing defendant to a concurrent term of 10 to 21 months imprisonment for possession of stolen goods.
 

 Defendant filed notice of appeal from the 1 October 2014 judgments on 6 October 2014 and then filed a motion for appropriate relief ("MAR") on 8 October 2014. In the MAR, defendant challenged his conviction for possession of stolen goods on the basis that the trial court instructed the jury on a theory of possession of stolen goods not supported by the indictment. Specifically, defendant asserted as follows:
 

 A defendant may not be convicted on a theory not supported by the indictment. In this case, the substance of the indictment alleged possession of stolen goods based on the value of the goods.
 
 See
 
 N.C. Gen.Stat. [§ ] 14-72(a). The court, however, instructed on possession of stolen goods pursuant to a breaking and or entering.
 
 See
 
 N.C. Gen.Stat. [§ ] 14-72(b)(2).
 

 In the State's answer filed 30 October 2014, the State conceded a fatal variance in that "the instruction [given for felony possession of stolen goods] did not match the indictment." The State then asked that the court allow defendant's MAR, adding that
 

 [d]efendant in 14CRS128 would be entitled to a new trial and the remaining convictions would remain undisturbed. Defendant in 13CRS61817 Obtaining Property by False Pretense and 14CRS129 Habitual Felon would need to be resentenced.
 

 On 13 January 2015, the trial court issued an order granting defendant's MAR and setting aside the judgment for possession of stolen goods in favor of a new trial. The trial court further indicated that defendant "should be resentenced on the remaining matters."
 

 Following a resentencing hearing on 27 February 2015, the trial court entered a new judgment sentencing defendant for obtaining property by false pretenses as a habitual felon to 97 to 129 months imprisonment. The judgment was nearly identical to the original judgment, except that the credit for days in confinement was increased to account for the time that elapsed between entry of the judgments. Defendant gave notice of appeal from the new judgment in open court.
 

 II.
 
 Discussion
 

 Now on appeal, defendant argues the trial court erred (1) by denying his motion to dismiss the obtaining property by false pretense charge, (2) instructing the jury on acting in concert, and (3) resentencing defendant for obtaining property by false pretenses. We address the issues in order.
 

 1.
 
 Motion to Dismiss
 

 Defendant was indicted and convicted of obtaining property from BIMCO, specifically "U.S. Currency in the amount of $275.10[,]" by false pretenses. As provided in the indictment, "[t]he false pretense consisted of the following: ... defendant sold electrical wire for scrap and represented that it was not stolen and was his to sell, when in fact, the electrical wire was stolen and ... defendant was not entitled to sell it." Now on appeal, defendant argues the trial court erred in denying his motion to dismiss because the evidence was insufficient to sustain his conviction for obtaining property by false pretenses.
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo.
 
 "
 
 State v. Smith,
 

 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). " 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' "
 
 State v. Fritsch,
 

 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (quoting
 
 State v. Barnes,
 

 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 914
 
 , 918 (1993) ),
 
 cert. denied,
 

 531 U.S. 890
 
 ,
 
 121 S.Ct. 213
 
 ,
 
 148 L.Ed.2d 150
 
 (2000). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most
 
 *299
 
 favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 
 State v. Rose,
 

 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994),
 
 cert. denied,
 

 515 U.S. 1135
 
 ,
 
 115 S.Ct. 2565
 
 ,
 
 132 L.Ed.2d 818
 
 (1995).
 

 N.C. Gen.Stat. § 14-100 provides in pertinent part as follows:
 

 If any person shall knowingly and designedly by means of any kind of false pretense whatsoever ... obtain or attempt to obtain from any person within this State any money ... with intent to cheat or defraud any person of such money, ... such person shall be guilty of a felony[.] ...
 

 N.C. Gen.Stat. § 14-100(a) (2015). Construing this statute, our Courts have held that the four essential elements to the offense are as follows: " '(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another.' "
 
 State v. Simpson,
 

 159 N.C.App. 435
 
 , 439,
 
 583 S.E.2d 714
 
 , 716, (quoting
 
 State v. Cronin,
 

 299 N.C. 229
 
 , 242,
 
 262 S.E.2d 277
 
 , 286 (1980) ),
 
 aff'd per curiam,
 

 357 N.C. 652
 
 ,
 
 588 S.E.2d 466
 
 (2003).
 

 Defendant only challenges the third element in this case. Specifically, defendant argues there was no evidence that anyone at BIMCO was deceived by defendant. Defendant asserts the BIMCO employee who purchased the items from defendant was never identified and, even if defendant's signature on the transaction records is sufficient to show a false representation, there is no evidence that BIMCO employees believed the representation. Defendant claims the evidence instead "described a regimen in which [BIMCO] and its employees were indifferent to the legal ownership of metal presented for sale as scrap." Defendant asserts the evidence "describes a 'nod and wink' system in which actual deception did not occur. It falls short of proof beyond a reasonable doubt that anyone at [BIMCO] was actually deceived by [defendant's] signature on a transaction form." Defendant specifically refers to Cloninger's testimony that when "[BIMCO] ask[s] where [the material] comes from, ... everybody says 'from home,' and then they drop it off."
 

 We first note that it is for the jury to determine whether the evidence proves beyond a reasonable doubt that defendant is guilty. As explained above, all that is required to survive a motion to dismiss is that there be substantial evidence. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith,
 

 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980).
 

 Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.
 

 Fritsch,
 

 351 N.C. at 379
 
 ,
 
 526 S.E.2d at 455
 
 (internal quotation marks, citation, and emphasis omitted).
 

 Here, the evidence was that defendant signed paperwork representing he was the lawful owner of the materials he was selling. Cloninger specifically explained that "[o]n the signature it says that they are the lawful owner or legal person to sell that material." BIMCO then paid defendant for the materials that defendant represented were his to sell. At that point, the transaction was complete. When viewed in the light most favorable to the State, we hold a reasonable inference of deception and defendant's guilt may be drawn from these circumstances.
 

 Although addressing a separate issue, the Court's reasoning in
 
 State v. Cronin,
 

 299 N.C. 229
 
 ,
 
 262 S.E.2d 277
 
 (1980), is informative in the present case. In arguing an indictment for obtaining property by false pretenses was defective because it failed to allege actual deception, the defendant in
 
 Cronin
 
 attempted to distinguish prior decisions
 
 *300
 
 that dealt with the causal connection between a false representation and the obtainment of something of value from cases concerned with the question of whether the false pretense in fact deceived the victim.
 
 Id.
 
 at 237-38,
 
 262 S.E.2d at 283
 
 . Upon review, the Court overruled the defendant's argument holding that it was a "distinction without a difference[ ]" because "[i]f the false pretense caused the victim to give up his property, it logically follows that the property was given up because the victim was in fact deceived by the false pretense."
 
 Id.
 
 at 238,
 
 262 S.E.2d at 283
 
 .
 

 Applying the same rationale, it can be reasonably inferred from the evidence in this case that defendant's false representation caused BIMCO to pay defendant. It then logically follows that BIMCO was in fact deceived.
 

 Furthermore, although Cloninger did testify that everybody represents that materials they are selling come from home when BIMCO inquires, Cloninger's testimony does not establish that BIMCO was not deceived in the present case. At most, Cloninger's testimony shows BIMCO may have been suspicious of defendant's representation that he was the lawful owner of the items. Yet, it is clear from this Court's holding in
 
 Simpson
 
 that evidence that a victim is suspicious of a seller's representation as to ownership does not preclude the charge from surviving a motion to dismiss.
 

 In
 
 Simpson,
 
 a jury found the defendant guilty of one count of misdemeanor possession of stolen goods and two counts of obtaining property by false pretenses based on evidence tending to show that the defendant sold three stolen cameras to a pawn shop upon representations that he owned the cameras.
 
 159 N.C.App. at 436
 
 ,
 
 583 S.E.2d at 715
 
 . The defendant in
 
 Simpson
 
 appealed arguing the trial court erred in denying his motion to dismiss. This Court summarized the defendant's argument to the trial court in that case as follows:
 

 "I think one of the elements is that [the] defendant, in fact, does deceive the party listed as the victim. The victim in this case is ... the [pawn shop]. However, by the testimony of [the pawn shop owner], the pawn shop owner was not deceived whatsoever. [The pawn shop owner] took the cameras [,] suspected they were stolen[,] called the Sheriff's Department[,] and didn't place the cameras out for sale. [The pawn shop owner] knew there was a problem or certainly suspected there was a problem. The element of actual deception ... is not present."
 

 Id.
 
 at 438,
 
 583 S.E.2d at 716
 
 (alterations in original omitted). Over a dissent, this Court upheld the trial court's denial of the defendant's motion to dismiss explaining as follows:
 

 [the d]efendant contends the State failed to present any evidence that the victim, [the pawn shop owner], was actually deceived by [the] defendant's false representations. As a basis for that contention, [the] defendant asserts that [the pawn shop owner's] suspicion that the cameras were stolen, coupled with the fact that the cameras were actually stolen, proves that the victim, [the pawn shop owner], was not, in fact, deceived. [The d]efendant's argument, however, relies on a retrospective interpretation of the facts. At the time of the transaction, [the pawn shop owner] did not know that the cameras were stolen. In fact, [the pawn shop owner] testified that he "called [the detective] and told him that he had some cameras there that he needed to look at." Although [the pawn shop owner] had a suspicion that the cameras were stolen, [the pawn shop owner]'s testimony, when viewed in the light most favorable to the State, reasonably permits a jury to make an inference that [the pawn shop owner] called [the detective] in order to confirm that the items were not stolen property. As this inference is reasonable, and adequate to support the conclusion that [the pawn shop owner] was, in fact, deceived, this assignment of error is overruled.
 

 Id.
 
 at 439,
 
 583 S.E.2d at 716-17
 
 (footnote and alterations in original omitted). Our Supreme Court later affirmed this Court's majority opinion
 
 per curiam.
 

 357 N.C. 652
 
 ,
 
 588 S.E.2d 466
 
 (2003).
 

 As in
 
 Simpson,
 
 the evidence in this case viewed in the light most favorable to the
 
 *301
 
 State was sufficient to support a reasonable inference of deception and defendant's guilt. Thus, the trial court did not err in denying defendant's motion to dismiss the obtaining property by false pretenses charge.
 

 2.
 
 Acting In Concert Instruction
 

 Defendant objected to the proposed issuance of an acting in concert instruction during the charge conference. Following a discussion of the issue, the trial court determined the instruction was proper based on the evidence and proceeded to instruct the jury on acting in concert as to all offenses over defendant's objection. As an alternative to issue one, defendant argues that even if the trial court did not err in denying his motion to dismiss, the trial court erred by instructing the jury on the theory of acting in concert because there was no basis in the evidence to support the theory.
 

 "The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence."
 
 State v. Cameron,
 

 284 N.C. 165
 
 , 171,
 
 200 S.E.2d 186
 
 , 191 (1973),
 
 cert. denied,
 

 418 U.S. 905
 
 ,
 
 94 S.Ct. 3195
 
 ,
 
 41 L.Ed.2d 1153
 
 (1974). Thus, "[i]t is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence."
 
 State v. Shaw,
 

 322 N.C. 797
 
 , 803,
 
 370 S.E.2d 546
 
 , 549 (1988). "[A] trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial."
 
 Cameron,
 

 284 N.C. at 171
 
 ,
 
 200 S.E.2d at 191
 
 . "[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed
 
 de novo
 
 by this Court."
 
 State v. Osorio,
 

 196 N.C.App. 458
 
 , 466,
 
 675 S.E.2d 144
 
 , 149 (2009).
 

 "To act in concert means to act together, in harmony or in conjunction one with another pursuant to a common plan or purpose."
 
 State v. Joyner,
 

 297 N.C. 349
 
 , 356,
 
 255 S.E.2d 390
 
 , 395 (1979). Thus, "[a]n instruction on ... acting in concert is proper when the State presents evidence tending to show the defendant was present at the scene of the crime and acted together with another who did acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime."
 
 State v. Cody,
 

 135 N.C.App. 722
 
 , 728,
 
 522 S.E.2d 777
 
 , 781 (1999) (internal quotation marks and citation omitted).
 

 In this case, the only evidence indicating the involvement of someone other than defendant was testimony from Barkley that defendant "[s]tated that he got [the spool] from Mr. Atchley[ ]" and "[defendant] figured it was probably stolen." Although the evidence regarding Mr. Atchley may support the issuance of an acting in concert instruction as to offenses for which defendant was acquitted, the State's evidence was that defendant acted alone in obtaining property from BIMCO by false pretenses. There was no evidence that Mr. Atchley committed any of the acts necessary to constitute obtaining property from BIMCO by false pretenses. Furthermore, the presence of defendant's girlfriend at BIMCO at the time of defendant's arrest, without more, is not evidence of her involvement in a common plan or purpose to commit the crime. Because, there was a complete lack of evidence in this case that anyone but defendant committed the acts necessary to constitute the crime of obtaining property by false pretenses, it was error for the trial court to instruct the jury that it could find defendant guilty of the offense based on a theory of acting in concert.
 

 "[A]n error in jury instructions is prejudicial and requires a new trial only if 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.' "
 
 State v. Castaneda,
 

 196 N.C.App. 109
 
 , 116,
 
 674 S.E.2d 707
 
 , 712 (2009) (quoting N.C. Gen.Stat. § 15A-1443(a) (2007) ). Although, "[i]t is generally prejudicial error for the trial judge to permit a jury to convict upon a theory not supported by the evidence [,]"
 
 State v. Moore,
 

 315 N.C. 738
 
 , 749,
 
 340 S.E.2d 401
 
 , 408 (1986), it is evident the error was not prejudicial in this case.
 

 Unlike the cases cited by defendant,
 
 see
 

 State v. Hargett,
 

 255 N.C. 412
 
 ,
 
 121 S.E.2d 589
 
 (1961),
 
 State v. Brown,
 

 80 N.C.App. 307
 
 ,
 
 342 S.E.2d 42
 
 (1986),
 
 State v. Windley,
 

 173 N.C.App. 187
 
 ,
 
 617 S.E.2d 682
 
 (2005), where
 
 *302
 
 there was evidence that others were present with the defendants at the times, or just before or after the times the defendants were alleged to have committed the crimes from which it was plausible the jury could have erroneously convicted the defendants based on a theory of acting in concert, there is no such evidence in the present case. Defendant was the only one on trial for obtaining property from BIMCO by false pretenses and all the evidence was that defendant was the sole perpetrator of the offense-defendant signed the paperwork falsely representing he was the lawful owner of the materials and received payment from BIMCO for the materials. There was no evidence that anyone was with defendant during the transactions.
 

 Based on the facts of this case, we hold the trial court's acting in concert instruction does not amount to prejudicial error because it is implausible the jury would have reached a different result absent the acting in concert instruction.
 

 3.
 
 Resentencing
 

 Lastly, defendant contends the second judgment for obtaining property by false pretenses entered on 27 February 2015 is void for lack of jurisdiction and, therefore, the original judgment entered 1 October 2014 remains in full force and effect. Specifically, defendant contends the trial court did not retain jurisdiction to resentence defendant for obtaining property by false pretenses because the MAR only concerned his conviction for possession of stolen goods, which was entered on a separate judgment.
 

 At the outset, it important to explain the context for defendant's challenge since the 27 February 2015 judgment is nearly identical to the 1 October 2014 judgment. Between the times the original judgment and second judgment were entered, defendant had prior suspended sentences activated because of probation violations. Therefore, while the sentence imposed in the original judgment began to run immediately upon entry on 1 October 2014, defendant contends that, pursuant to N.C. Gen.Stat. § 14-7.6, he is now forced to serve a longer term of imprisonment because the sentence imposed in the 27 February 2015 judgment does not begin to run until his activated sentences have been served.
 

 We first note that it does not appear the trial judge intended to resentence defendant so that defendant was required to serve additional time. In fact, because the issue was never brought up during the resentencing hearing, the trial judge may not even have been aware of the issue. The last sentence in N.C. Gen.Stat. § 14-7.6 provides that habitual felon sentences "shall run consecutively with and shall commence at the expiration of any sentence being served by the person sentenced under this section." N.C. Gen.Stat. § 14-7.6 (2015). Despite the mandate in N.C. Gen.Stat. § 14-7.6, the trial judge failed to indicate on the 27 February 2015 judgment that he was ordering the habitual felon sentence imposed for obtaining property by false pretenses to begin at the expiration of all sentences which defendant was presently obligated to serve. Thus, it appears the sentence imposed during resentencing began upon entry of the judgment on 27 February 2015, not upon the conclusion of the sentences activated upon revocation of defendant's probation.
 

 Although the trial judge's failure to order the habitual felon sentence to begin at the expiration of all sentences which defendant is presently obligated to serve would be error, the failure to so order in this case is of no consequence because we agree with defendant that in this case the trial court did not retain jurisdiction to resentence defendant for obtaining property by false pretenses.
 

 Pursuant to N.C. Gen.Stat. § 15A-1448, the trial court is divested of jurisdiction when notice of appeal has been given and the period for filing notice of appeal, fourteen days from entry of the judgment,
 
 see
 
 N.C. R.App. P. 4 (2016), has expired. N.C. Gen.Stat. § 15A-1448(a)(2) (2015). However, the trial court retains jurisdiction to act in a case when a MAR is made within ten days of entry of judgment, whether or not notice of appeal has been given.
 
 See
 
 N.C. Gen.Stat. § 15A-1414(a) and (c) (2015) ; N.C. Gen.Stat. § 15A-1448(a)(2).
 

 As detailed above in the background, defendant filed notice of appeal from the 1
 
 *303
 
 October 2014 judgments on 6 October 2014. Defendant then filed an MAR on 8 October 2014 within the ten day period to file such a motion. Although defendant's MAR listed the case numbers for all of the offenses for which he was indicted, defendant's MAR only challenged defendant's conviction for possession of stolen goods in case number 14 CRS 128. Because defendant's conviction for possession of stolen goods in case number 14 CRS 128 was not consolidated with any other offenses and entered on its own judgment, entirely separate from the judgment on defendant's convictions for obtaining property by false pretenses and attaining habitual felon status, we hold the MAR only retained the trial court's jurisdiction to act regarding defendant's conviction for possession of stolen goods in case number 14 CRS 128. Thus, the 27 February 2015 judgment entered upon resentencing is void for lack of jurisdiction.
 

 There was no necessity or authority for the trial court to resentence defendant in this case to a sentence identical to the one previously imposed, and thereby change the date of the entry of judgment, when defendant successfully challenged a separate conviction that had no effect on the convictions for which he was resentenced.
 

 III.
 
 Conclusion
 

 For the reasons discussed, we hold the trial court did not error in denying defendant's motion to dismiss. Although the trial court did err in instructing the jury that it could find defendant guilty of obtaining property by false pretenses based on a theory of acting in concert, that instruction was not prejudicial. As to resentencing, the trial court lacked jurisdiction to resentence defendant for convictions entered on a judgment not challenged in defendant's MAR and not affected by the grant of defendant's MAR. Thus, the judgment entered in file number 13 CRS 61817 on 27 February 2015 is a nullity and vacated and the original judgment entered on 1 October 2014 remains in full force and effect.
 

 NO ERROR IN PART AND REVERSED IN PART.
 

 Judges DIETZ and TYSON concur.
 

 [1]
 

 Defendant was also indicted on one count of felony breaking and entering and one count of larceny after breaking and entering in a fourth indictment with file number 13 CRS 61816. Defendant, however, was found not guilty of those charges and, besides subtle references to the charges in the transcript and record, those charges are not mentioned in this appeal.