STATE OF NORTH CAROLINA v. RODREGUISE LOWELL CALHOUN

No. COA07-580

(Filed 4 March 2008)

**1. Appeal and Error— preservation of issues—Confrontation Clause issue—not raised at trial**

Defendant waived review of a Confrontation Clause issue by not objecting at trial on constitutional grounds to testimony that the decedent in a murder prosecution had indicated to the witness that defendant and another were the shooters.

**2. Constitutional Law— effective assistance of counsel—failure to raise Confrontation Clause issue—nontestimonial statements—dying declarations**

A first-degree murder defendant received effective assistance of counsel even though his trial counsel did not raise a Confrontation Clause argument concerning identification testimony by the dying victim, and that argument could not then be considered on appeal. The statements were nontestimonial, and alternatively, dying declarations constitute a special exception to Sixth Amendment confrontation rights.

Appeal by defendant from judgment entered 25 May 2006 by Judge Henry W. Hight, Jr. in Wake County Superior Court. Heard in the Court of Appeals 28 November 2007.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Ronald M. Marquette, for the State.*

*Mark Montgomery for defendant-appellant.*

HUNTER, Judge.

This is Rodreguise Lowell Calhoun's ("defendant") second appeal to this Court. In *State v. Calhoun*, 174 N.C. App. 626, 621 S.E.2d 343 (2005) (unpublished), this Court granted defendant a new trial "because the State used his silence as evidence of his guilt." *Id.* After the retrial, a jury found defendant guilty of first degree murder in violation of N.C. Gen. Stat. § 14-17, and the judgment was entered on 25 May 2006. Defendant was sentenced to life imprisonment without the possibility of parole. Defendant now appeals to this Court. After careful consideration, we find no error in defendant's second trial.

There is no dispute that Kayla Samuels ("decedent") was shot and killed by a single .44 caliber bullet on 25 April 2002. There is also no dispute that defendant and Deshune "Worm" Bennett ("Bennett") were present when decedent was shot. The State presented evidence tending to show that defendant was the shooter, while defendant presented evidence indicating that Bennett was the shooter. The lone eyewitness to the shooting was decedent, who indicated that defendant and Bennett had shot him. Both defendant and Bennett were seen fleeing the scene.

The State's evidence tended to show that Esther Williams ("Williams") returned to her home and found defendant and Bennett inside. Williams told the two men that she was going to leave her house to shop, and they should leave before she returned home again. Williams also testified that she saw decedent next door to her home.

Albert Jones ("Jones"), a neighbor of Williams's, saw decedent walk into Williams's home. Later, Jones heard a gunshot from the Williams residence and saw defendant standing near a window in the same residence. Defendant noticed Jones and waved a gun at him, signaling Jones to move away from the back of the house. Jones complied, retrieved a shotgun, and waited for someone to come out of the Williams's home.

Defendant ran out of the home first, with something wrapped in his hand and his face covered. Bennett followed, with papers in his hands like "he had been in [decedent's] pocket[.]" At this point, Jones fired his shotgun, hitting Bennett.

At approximately 7:00 p.m., Officer Lee Hartman responded to a call concerning shots fired in the vicinity of Williams's home. Both Officer Hartman and Williams arrived at her home at the same time. Williams and Hartman entered the home, finding decedent motionless on the living room floor. Williams asked decedent who had shot him, and decedent told her that it was "Chico" and "Worm." Williams asked decedent to squeeze her hand to confirm that "Chico" and "Worm" were the shooters, and decedent did so. Officer Hartman witnessed and recorded the identification. Williams later identified defendant as "Chico" and Deshune Bennett as "Worm" from photographs at the Raleigh Police Department.

On 26 April 2002, the police stopped a taxi in which Bennett was a passenger. Bennett was carrying $853.00 in his front pocket and some loose cash in another pocket. A box of .44 caliber ammunition was taken from the waistband of another passenger. The box

of ammunition was designed to hold twenty bullets but contained only eighteen.

Defendant testified that Bennett was the shooter and that it was accidental. He also testified that he fled because he panicked after realizing that decedent had been shot, and heard more shots while fleeing. The day after the shooting, defendant learned that the police were investigating him as a possible suspect, so he turned himself in.

Defendant presents the following issues for this Court's review: (1) whether the trial court committed plain error by admitting statements from decedent into evidence; and (2) whether defendant received ineffective assistance of counsel.

I.

**[1]** Defendant first argues that Williams's testimony that decedent indicated that defendant and Bennett were the shooters was testimonial hearsay, admitted in violation of the Confrontation Clause, and the trial court's failure to exclude that evidence upon its own motion was plain error. The State argues that defendant, by failing to object to the admission of the testimony, has waived any review of this issue. We agree.

In *State v. Chapman,* 359 N.C. 328, 359, 611 S.E.2d 794, 819 (2005), our Supreme Court refused to review a defendant's Sixth Amendment challenge to testimony offered by a police officer because the defendant had failed to object on constitutional grounds to its admission at trial. Additionally, our Supreme Court has held that "[t]he constitutional right of an accused to be confronted by the witnesses against him is a personal privilege which he may waive expressly or by a failure to assert it in apt time even in a capital case." *State v. Braswell,* 312 N.C. 553, 558, 324 S.E.2d 241, 246 (1985) (emphasis omitted). Defendant, having failed to object at trial on constitutional grounds, has therefore waived review of the issue by this Court. Accordingly, defendant's assignment of error as to this issue is rejected.

II.

**[2]** Defendant next argues that he received ineffective assistance of counsel because his trial counsel failed to raise a Confrontation Clause argument to the trial court. We disagree.

The Sixth Amendment of the United States Constitution guarantees an accused a right to counsel in criminal prosecutions.

*Strickland v. Washington*, 466 U.S. 668, 685, 80 L. Ed. 2d 674, 692 (1984). This right to counsel includes the right to the effective assistance of counsel. *State v. Grooms*, 353 N.C. 50, 64, 540 S.E.2d 713, 722 (2000)· (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 25 L. Ed. 2d 763, 773 n.14 (1970)). In order to establish that trial counsel was ineffective, defendant must show: (1) that his counsel's performance was deficient under the circumstances of the case; and (2) that he suffered prejudice from the inadequate representation. *Strickland*, 446 U.S. at 700, 80 L. Ed. 2d at 702.

In the instant case, defendant argues that he was prejudiced by his counsel's failure to assert a Confrontation Clause objection to the testimony regarding the identity of the alleged shooters. Because we find that there was no Confrontation Clause violation in this case, even were defense counsel to have objected, defendant is unable to establish deficient performance, much less prejudice.

The Confrontation Clause of the Sixth Amendment guarantees "[i]n all criminal prosecutions [that] the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI; *see also* N.C. Const. art. I, § 23 ("every person charged with [a] crime has the right to . . . confront the accusers and witnesses with other testimony"). This amendment applies to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 13 L. Ed. 2d 923, 926 (1965).

The Confrontation Clause is violated when a "testimonial" statement from an unavailable witness is introduced against a defendant who did not have a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68, 158 L. Ed. 2d 177, 203 (2004) ("[w]here testimonial evidence is at issue . . . , the Sixth Amendment demands what the common law required: unavailability and a prior. opportunity for cross-examination"). The rule in *Crawford* is not absolute, however, as the Court left open the possibility that testimonial statements from unavailable witnesses may still be admitted if they would have constituted a common law exception to the right of confrontation. Among the possible "special exceptions" are the so-called "dying declarations." *Id.* at 56 n.6, 158 L. Ed. 2d at 195 n.6. Accordingly, in this case, the admission of the testimony will not be error if: (1) the statements were non-testimonial; and/or (2) the "dying declaration" constitutes a special exception.[1] We address each issue in turn.

---

1. We note that in this Court's prior opinion regarding defendant's first trial, we held that the trial court did not abuse its discretion in admitting decedent's statements

A.

Testimonial statements include prior testimony and statements taken by police officers during the course of interrogations. *Id.* at 68, 158 L. Ed. 2d at 203. In the instant case, decedent's statement was not prior testimony or made to a police officer during the course of an interrogation. Instead, the statement was made to Williams, a private citizen. Thus, the Sixth Amendment is not implicated as the statements were non-testimonial.

Moreover, even if the statements were made to a police officer, the United States Supreme Court has held that "[s]tatements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, ——, 165 L. Ed. 2d 224, 237 (2006). Among the acceptable purposes of the interrogation is to "establish the identity of the assailant, so that the dispatched officers might know whether they would be encountering a violent felon." *Id.* at ——, 165 L. Ed. 2d at 240. There being such an emergency here, we hold that decedent's statements were non-testimonial on this ground as well. Accordingly, defendant is unable to establish that he was prejudiced by his defense counsel's failure to object on Confrontation Clause grounds as he would not have prevailed on that objection. Defendant's assignment of error as to this issue is therefore rejected.

B.

We pause now to address in the alternative whether a dying declaration constituted a "special exception" to an accused's right to confront witnesses when the Sixth Amendment was adopted. After careful consideration, we conclude that it was and hold that dying declarations are not violative of the Sixth Amendment.

The first court to address the issue, which was left open by the Supreme Court in *Crawford*, was the California Supreme Court. *See People v. Monterroso*, 101 P.3d 956 (Cal. 2004). That court held that "the common law pedigree of the exception for dying declarations poses no conflict with the Sixth Amendment." *Id.* at 972. The *Monterroso* court reasoned that, under *Crawford*, "the confrontation

---

that defendant and Bennett were the shooters as it constituted a dying declaration under N.C. Gen. Stat. § 8C-1, Rule 804(b)(2) (2003). That issue, therefore, is not before us on appeal as it has already been decided by this Court and has become the law of the case. *See State v. Moore*, 276 N.C. 142, 145, 171 S.E.2d 453, 455 (1970) (when issue has already been determined in a prior appeal, no further discussion of it is required).

clause 'is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding[.]' " *Id.* (quoting *Crawford*). Accordingly, the court then reviewed the history of the dying declaration and determined that "[d]ying declarations were admissible at common law in felony cases, even when the defendant was not present at the time the statement was taken." *Id.* (citing T. Peake, Evidence (3d ed. 1808) p. 64.)

> In particular, the common law allowed " 'the declaration of the deceased, after the mortal blow, as to the fact itself, and the party by whom it was committed,' " provided that " 'the deceased at the time of making such declarations was conscious of his danger.' " (*King v. Reason* (K.B. 1722) 16 How. St. Tr. 1, 24-25.) To exclude such evidence as violative of the right to confrontation "would not only be contrary to all the precedents in England and here, acquiesced in long since the adoption of these constitutional provisions, but it would be abhorrent to that sense of justice and regard for individual security and public safety which its exclusion in some cases would inevitably set at naught. But dying declarations, made under certain circumstances, were admissible at common law, and that common law was not repudiated by our constitution in the clause referred to, but adopted and cherished." (*State v. Houser* (Mo. 1858) 26 Mo. 431, 438; *accord, Mattox v. United States* (1895) 156 U.S. 237, 243-44 [39 L. Ed. 409, 15 S.Ct. 337] ["from time immemorial they have been treated as competent testimony, and no one would have the hardihood at this day to question their admissibility"].)

*Id.*

Other states have decided the issue and have also ruled that dying declarations serve as a common law exception to the right of confrontation and thus do not violate the Sixth Amendment. *See, e.g., People v. Taylor,* 737 N.W.2d 790, 794 (Mich. Ct. App. 2007); *Harkins v. Nevada,* 143 P.3d 706, 711 (Nev. 2006); *People v. Gilmore,* 828 N.E.2d 293, 302-03 (Ill. App. Ct. 2005); *State v. Martin,* 695 N.W.2d 578, 585-86 (Minn. 2005); *State v. Manuel,* 685 N.W.2d 525, 532 (Wisc. 2004). There is not, however, complete agreement.

A federal district court held that dying declarations are violative of the Sixth Amendment because the statements are (1) unreliable and even if they were reliable, such is not a relevant consid-

eration; and (2) were not admissible at the time of the drafting of the Sixth Amendment. *United States v. Jordan*, 66 Fed. R. Evid. Serv. (Callaghan) 790 (D. Colo. 2005). The Illinois Court of Appeals disagreed with the reasoning of the Colorado District Court, stating that:

> We believe that the reasoning of *Monterroso* represents the sensible approach and choose to follow it instead of *Jordan*. *Crawford* provided an in-depth discussion of the right of confrontation as it existed at the time the sixth amendment was ratified and offered a strong statement regarding . . . the admissibility of dying declarations. Considering the Supreme Court's guidance on the issue, we are reluctant to expand that right beyond the historical parameters indicated in Crawford.

*Gilmore*, 828 N.E.2d at 302.

We agree with the *Gilmore* court's reasoning rejecting *Jordan* and follow the majority of states that have decided this issue and hold that a dying declaration is a "special exception" under *Crawford* to the Sixth Amendment right to confrontation. Defendant's assignments of error as to this issue are therefore rejected.

III.

In summary, we hold that defendant has waived review of the constitutional issue presented to this Court for failure to make such an argument to the trial court. We also hold that defendant is unable to establish deficient performance as declarant's statements were non-testimonial and, in the alternative, we hold that defendant's counsel's performance was not deficient as dying declarations constitute a special exception to the Sixth Amendment's confrontation rights. Accordingly, defendant's trial was free from error.

No error.

Judges CALABRIA and STROUD concur.