STATE OF NORTH CAROLINA
v.
JERRY KENNETH CALL, JR.

No. COA13-266

Filed 1 October 2013

**Constitutional Law—right to cross-examine witnesses—non-testimonial evidence—no violation**

The trial court did not err in a larceny case by denying defendant's motion for a mistrial. Defendant's argument that two pieces of evidence admitted at trial violated his Sixth Amendment right to cross-examine witnesses was without merit because the contested evidence was non-testimonial.

Appeal by defendant from judgment entered 13 September 2012 by Judge W. Douglas Albright in Rockingham County Superior Court. Heard in the Court of Appeals 26 August 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Robert K. Smith, for the State.*

*Attorney Mary March Exum, for defendant.*

Elmore, Judge.

On 12 September 2012, a jury found Jerry Kenneth Call, Jr. (defendant) guilty of Larceny from a Merchant pursuant to N.C. Gen. Stat §14-72.11(4). On 13 September 2012, defendant was sentenced to 18-31

STATE v. CALL

[230 N.C. App. 45 (2013)]

months imprisonment in the North Carolina Department of Corrections. Defendant now appeals and raises as error the trial court's denial of his motion to dismiss and motion for a mistrial. However, on 13 August 2013, defendant conceded that the trial court did not err in denying his motion to dismiss and voluntarily withdrew this issue on appeal. After careful consideration, we conclude that the trial court did not err in denying defendant's motion for a mistrial.

## I. Facts

On 12 January 2010, Officer Daniel Abruscato of the Eden Police Department was notified to be on the lookout for a green Ford Expedition, the suspect getaway vehicle of an alleged larceny occurring at Wal-Mart in Eden. Officer Abruscato spotted the vehicle traveling westbound on Stadium Drive, and initiated a traffic stop on Washington Street, less than two miles from the Wal-Mart. Officer Abbruscato observed seven passengers in the vehicle, including defendant, and he saw numerous Wal-Mart bags containing over 50 cans of baby formula in the rear passenger area. After instructing the occupants to sit on a nearby sidewalk, Officer Abbruscato searched the vehicle and ultimately arrested passenger Sabrina Cobbler. Defendant was neither detained nor questioned at the scene.

Thereafter, Officer Abbruscato confiscated the baby formula and contacted the Wal-Mart to verify whether the store was missing formula. He then took the formula to the Eden Police Department.

Later that same day, Officer Abbruscato met with Billy Dunn, an assistant manager at the Wal-Mart. Dunn confirmed that the cans of baby formula belonged to his Wal-Mart store. Officer Abbruscato and Dunn then signed a "Receipt For Evidence And/Or Property" form (Receipt for Evidence), which listed the exact type and amount of baby formula that was obtained from the traffic stop. The Receipt for Evidence showed that cans of baby formula were released by Officer Abbruscato on 12 January 2010 and given to Dunn. Dunn then notified Wal-Mart's Protection Coordinator, Mr. Fred Pedone, about a "loss of product." As a result, Pedone launched an internal investigation, which led to a formal investigation by the Eden Police Department. On 13 January 2010, Officer Abbruscato reviewed the Wal-Mart in-store camera recording of the alleged larceny, which showed defendant and other individuals taking cans of baby formula from the store past the point of sale without paying for the items. Officer Abbruscato subsequently took out a criminal warrant on defendant for several charges, including Larceny From a Merchant.

Dunn died on 25 April 2011 and was unavailable to testify at defendant's trial on 10 September 2012. The trial court denied defendant's pre-trial motion *in limine* to prevent the State from "making reference to reports, statements or conclusions" of Dunn. At trial, Dunn's statements to Pedone about the lost product and the Receipt for Evidence were admitted into evidence over defendant's objection. As a result of the aforementioned admitted evidence, defendant made a motion for a mistrial, which was denied by the trial court.

## II. Analysis

Defendant argues that the trial court erred in denying his motion for a mistrial. Specifically, defendant contends that two pieces of evidence admitted at trial violated his Sixth Amendment right to cross-examine witnesses and resulted in an unfair and prejudiced trial. We disagree.

It is within the sole direction of the trial court whether to grant a mistrial. *State v. Wood*, 168 N.C. App. 581, 583, 608 S.E.2d 368, 370 (2005) (citations omitted). This Court has recognized that "where matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted); *see also White*, 312 N.C. at 777, 324 S.E.2d at 833 ("A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason . . . [or] upon a showing that [the trial court's decision] was so arbitrary that it could not have been the result of a reasoned decision."). A mistrial should be granted only when "there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law." *State v. Blackstock*, 314 N.C. 232, 243-44, 333 S.E.2d 245, 252 (1985) (citation omitted).

"Our review of whether defendant's Sixth Amendment right of confrontation was violated is three-fold: (1) whether the evidence admitted was testimonial in nature; (2) whether the trial court properly ruled the declarant was unavailable; and (3) whether defendant had an opportunity to cross-examine the declarant." *State v. Clark*, 165 N.C. App. 279, 283, 598 S.E.2d 213, 217 (2004) (citation omitted). "[A] trial court must consider two factors in determining whether statements made to the police constitute testimonial evidence: (1) the stage of the proceedings at which the statement was made and (2) the declarant's knowledge,

expectation, or intent that his or her statements would be used at a subsequent trial." *State v. Huu The Cao*, 175 N.C. App. 434, 437, 626 S.E.2d 301, 303 (2006) (citation omitted). Statements become testimonial "when police questioning shifts from mere preliminary fact-gathering to eliciting statements for use at a subsequent trial[.]" *Id.* (citations and quotations omitted). Such statements include "response[s] to structured police questioning." *State v. Morgan*, 359 N.C. 131, 156, 604 S.E.2d 886, 901 (2004) (citation and quotations omitted). Testimonial evidence "indicate[s] that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *State v. Lewis*, 361 N.C. 541, 546, 648 S.E.2d 824, 828 (2007) (citation and quotation omitted). However, a statement made to a private citizen that "was not prior testimony or made to a police officer during the course of an interrogation[]" is non-testimonial. *State v. Calhoun*, 189 N.C. App. 166, 170, 657 S.E.2d 424, 427 (2008).

First, defendant alleges that it was error for the trial court to have allowed Pedone to testify about a statement made to him by Dunn regarding a loss of product at the Wal-Mart store when defendant never had the opportunity to cross-examine Dunn. Thus, our inquiry is limited to whether Dunn's declarations were testimonial in nature. At trial, the following colloquy occurred:

> STATE:  Did you recall anything unusual on or about that date, sir?
>
> PEDONE:  Yes, sir.
>
> STATE:  To your knowledge, what was that, sir?
>
> PEDONE:  I was informed by Billy Dunn that we had a loss of –
>
> DEFENDANT:  Objection.
>
> TRIAL COURT:  Overruled.
>
> PEDONE:  I was informed by Billy Dunn that we had a loss of product. With that information, I initiated an investigation to determine the amount of loss and what the property was.

Dunn's statement was not made in direct response to police interrogation or at a formal proceeding while testifying. Rather, Dunn privately notified his colleague, Pedone, about a loss of product at the Wal-Mart store. This statement was made outside the presence of police and before

defendant was arrested and charged. Thus, the statement falls outside the purview of the Sixth Amendment. *See Calhoun, supra.* Furthermore, Dunn's statement was not aimed at defendant, and it is unreasonable to believe that his conversation with Pedone would be relevant two years later at trial since defendant was not a suspect at the time this statement was made. Thus, Dunn's statement was non-testimonial, and the trial court did not violate defendant's Constitutional right to cross-examine the witness by admitting it. *See State v. Lawson,* 173 N.C. App. 270, 276, 619 S.E.2d 410, 414 (2005) (citations and internal quotations omitted) (holding that evidence is non-testimonial in nature when made in the course of a private conversation, outside the presence of law enforcement, and without the reasonable expectation "to be used prosecutorially at a later trial."); *cf. Clark,* 165 N.C. App. at 284, 598 S.E.2d at 217 (citations and quotations omitted) (recognizing that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.").

Second, defendant avers that the trial court erred in admitting the Receipt for Evidence signed by Dunn. Defendant objected when the State asked to admit State's Exhibit 7, which included the Receipt for Evidence that was given by Officer Abbruscato to Dunn:

> STATE: Now, handing you what has been marked as State's Exhibit 7, if you could describe what this or these documents are, sir?

> PEDONE: There is [sic] actually two documents on this. The first one is . . . the release of property to the sheriff's department coming from Eden. And [the second one is] the actual training receipt[.]

> . . .

> STATE: The State would seek to admit Number 7.

> DEFENDANT: I will object.

> TRIAL COURT: Let me see it. Did you, just for clarification, did you testify as to the signatory reported to be that of Dunn?

> PEDONE: Yes, it does.

> TRIAL COURT: Do you recognize that to be, in fact, his signature?

PEDONE: I do.

TRIAL COURT: Overruled.

Dunn signed the Receipt for Evidence and received the baby formula cans during the initial stages of Officer Abbruscato's investigation. The purpose of the meeting was simply to release property from the Eden Police Department to Wal-mart, not to formally question Dunn about a criminal investigation. At the time Dunn signed the Receipt for Evidence, defendant was not even a suspect. The form in no way connects defendant to the alleged stolen property. In fact, the Receipt for Evidence indicates that the property was obtained from Nikki Denny and Cobbler. The receipt's purpose was to establish ownership, quantity, and type of baby formula that was released to Wal-Mart.

Accordingly, we conclude that Dunn's assertions contained in the Receipt for Evidence were non-testimonial, and thus the trial court did not err in denying defendant's motion for a mistrial.

### III. Conclusion

In sum, the trial court did not err in denying defendant's motion for a mistrial because the contested evidence was non-testimonial.

No Error.

Chief Judge MARTIN and HUNTER, JR., Robert N., concur.